## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| HYUNDAI HEAVY INDUSTRIES CO., LTD.,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>          Defendant. | | COMPLAINT<br><br>Court No. 18-00066 |

## <u>COMPLAINT</u>

Plaintiff Hyundai Heavy Industries Co., Ltd. ("HHI") ("Plaintiff"), by and through the undersigned counsel, White & Case, LLP, alleges and states as follows:

## <u>ADMINISTRATIVE DECISION TO BE REVIEWED</u>

1.      Plaintiff brings this Complaint to contest the final results issued by the International Trade Administration of the Department of Commerce ("Department") in the fourth administrative review of the antidumping duty order covering large power transformers ("LPTs") from the Republic of Korea as the results relate to LPTs produced, exported, and imported by Hyundai Heavy Industries, Co., Ltd. (Case No. A-580-867).  *Large Power Transformers from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 83 Fed. Reg. 11679 (Mar. 16, 2018) ("*POR4 Final Results*"); *see also* accompanying *Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Large Power Transformers from the Republic of Korea; 2015-2016* (Mar. 9, 2018) ("*POR4 I&D Memo*").

## JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and Section

and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended ("Tariff Act"), codified as

19 U.S.C. § 1516a(a)(2)(B)(iii).

## STANDING OF PLAINTIFF

3.      Plaintiff is a Korean producer/exporter and importer of merchandise subject to the *POR4*

*Final Results*.  Plaintiff participated in the Department's administrative review that resulted in

the contested finding.  Plaintiff therefore is an "interested party" within the meaning of Section

771(9)(A) of the Tariff Act, as amended, 19 U.S.C. § 1677(9)(A); and has standing to bring this

action pursuant to Section 516A(d) of the Tariff Act, as amended, 19 U.S.C. § 1516a(d) and

28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4.      The contested determination was published in the *Federal Register* on March 16, 2018.

83 Fed. Reg. 11679.  Plaintiff is filing the Summons and this Complaint on March 29, 2018,

within the thirty-day statutory time limit specified in 28 U.S.C. § 2636(c).  Thus, this action is

timely filed pursuant to Section 516A(a)(2)(A) of the Tariff Act, as amended, 19 U.S.C.

§ 1516a(a)(2)(A).

## PROCEDURAL HISTORY AND BACKGROUND

5.      On October 14, 2016, the Department initiated the fourth administrative review.

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 81 Fed. Reg. 71061,

71063, 71068 (Oct. 14, 2016).  The period of review was August 1, 2015 through July 31, 2016

("POR4").

6.      On January 3, 2017, the Department named HHI as a mandatory respondent and issued

the Questionnaire.  Memorandum from Moses Song to Scot Fullerton, *Antidumping Duty (AD)*

*Administrative Review of Large Power Transformers (LPTs) from the Republic of Korea (Korea): Respondent Selection Memorandum*, Jan. 3, 2017 at 6 (ACCESS Barcode 3533667-01). Two days later, the Department issued the Questionnaire. *Request for Information – Antidumping Duty Administrative Review: Hyundai Heavy Industries Co., Ltd. ("HHI") – Korea – Large Power Transformers*, Jan. 5, 2017 (ACCESS Barcode 3534314-01) ("*Initial Questionnaire*").

7.      In Section A of the Questionnaire, the Department instructed HHI to "{p}rovide a list of all the … sales office locations … involved in the development, production, sale and/or distribution of the merchandise under review operated by your company and its affiliates." *Id.* at A-4.  HHI completely responded in its February 2, 2017 response to Section A. *Large Power Transformers from South Korea:  Section A Response*, Feb. 2, 2017, at A-7–A-8, Attachment A-4 (ACCESS Barcode 3540807-01–3540807-09).

8.      In Section D of the Questionnaire, the Department instructed HHI to "separately report the price and cost for 'spare parts' and 'accessories' to ensure that product matches are based on accurate physical charateristics {*sic*} of the LPTs." *Initial Questionnaire* at D-1.  In its February 27, 2017 response to Section D, HHI explained that "there is no definition of what constitutes 'accessories.'" *Large Power Transformers from South Korea: Sections B-D Response*, Feb. 27, 2017, at D-2–D-3 (ACCESS Barcodes 3547247-01–3547247-04) (citing *Large Power Transformers from the Republic of Korea: Final Determination of Sales at Less Than Fair Value* 77 Fed. Reg. 40,857 (Jul. 11, 2012), accompanying Issues and Decision Memorandum at Comment 4).  Then, quoting the scope of the Department's antidumping duty order, HHI explained that "{t}ransformer parts that {are} physically attached to an LPT are within the definition of the scope of subject merchandise ….  In accordance with the definition of the scope

of subject merchandise, Hyundai has included the costs of all parts that are attached to, imported with or invoiced with the active parts of large power transformers." *Id.* at D-3.

9.      On March 13, 2017, the Department published the final results for the **third** administrative review ("***POR3***") of the antidumping duty order. *Large Power Transformers from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 13432 (Mar. 13, 2017) ("*POR3 Final Results*"); *see also* accompanying *Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Large Power Transformers from the Republic of Korea; 2014-2015* (Mar. 6, 2017) ("*POR3 I&D Memo*"). The Department applied total AFA to HHI based, in part, on the claim that HHI failed to "separately report the price and costs for accessories." *POR3 I&D Memo* at 26-27. The Department stated that "if Hyundai had questions about the definition of "accessories," **it could have contacted the Department to request clarification**; it failed to do so, and instead refused to provide such information." *Id.* at 27 (emphasis added).

10.     Accordingly, within two weeks of publication of the *POR3 Final Results*, HHI filed a request for clarification in the POR4 review, in which it described and documented the different definitions of "accessories" under the Department's scope, industry publications, and as used by other parties to the proceeding (namely, Petitioner ABB, Inc. ("ABB") and Respondent Hyosung Corporation). *Large Power Transformers from South Korea*: *Request for Clarification*, Mar. 29, 2017, at 5-15 (ACCESS Barcode 3556091-01) ("*Request for Clarification*"). HHI emphasized "that there is no universal definition of accessories in the transformer industry." *See id.* at 9. Thus, to ensure that it could report the price and cost of "accessories" in accordance with what the Department wanted, HHI requested that the Department (1) define the term "accessories;" (2) "clarify whether the Department requires Hyundai to report 'prices' for the defined accessories where the sales documents do not indicate any values and, if so, the methodology for

determining a 'price;'" and (3) "clarify what 'costs' means" in the context of "accessories." *Id.* at 14-15.

11.     A day later, on March 30, 2017, HHI "requested by email a meeting with the Department to discuss the 'accessories' issue.  The Department responded by asking that the meeting be deferred until it had issued supplemental questionnaires and Hyundai filed its responses." *Large Power Transformers from Korea: July 14, 2017 Meeting with Department and Response to ABB July 12, 2017 Comments on Hyundai's Supplemental Section B-D Questionnaire Responses*, Jul. 25, 2017, at 4 (ACCESS Barcode 3599154-01) ("*July Meeting Summary Letter*").

12.     On May 1, 2017, HHI responded to ABB's comments on the *Request for Clarification*, highlighting the problems with ABB's proposed definitions.  ABB's disagreement with HHI's proposed definitions further underscored the need for the Department to provide a uniform definition of "accessories." *See id.*; *see generally Large Power Transformers from South Korea: Comments on ABB's April 3, 2017 Response to Hyundai's Request for Clarification of the Definitions of "Separate Revenue for Sales-Related Services" and "Accessories"*, May 1, 2017 (ACCESS Barcode 3567290-01).

13.     In its May 19, 2017 *Second Sales Supplemental Questionnaire*, the Department requested that HHI describe ***its*** understanding of the term "accessories" and provide "a definition of how you use and/or understand the scope of the term 'accessories' when negotiating with your customers." *Antidumping Duty Administrative Review of Large Power Transformers from the Republic of Korea: Second Sales Supplemental Questionnaire*, May 19, 2017, at 9-10 (ACCESS Barcode 3574187-01) ("*Second Sales Supplemental Questionnaire*").  Thus, the Department did not reply to HHI's *Request for Clarification*.  Rather, the Department requested that HHI define the term "accessories." *See id.*

14.     In its response to this question, HHI explained:

> Hyundai has no particular understanding of the scope of the term "accessories" when negotiating with customers.  Internally, Hyundai does not have a definition of "accessories."  Moreover, there is no particular use of the term "accessories" by Hyundai's customers.  Indeed, even within respect to the same sale, Hyundai and the customer can and do use the term "accessories" inconsistently.  And, for some sales, the customer itself uses the term inconsistently with respect to the same transaction.

*Large Power Transformers from South Korea: 2nd Supplemental Sales Response (Q29 and Q30) and Supplemental D Questionnaire Response (Q14)*, June 16, 2017, at 2nd SS-1–2nd SS-2 (ACCESS Barcode 3582762-01).   Nevertheless, HHI answered each of the Department's questions in detail.  *See generally id.*

15.     The *Second Sales Supplemental Questionnaire* also instructed HHI to "provide a chart which includes a complete list of all of (1) HHI's subsidiaries and/or affiliates and (2) HHI's subsidiaries and/or offices that are related to sale and/or distribution of merchandise under review (please include addresses)."  *Id.* at 4.  In response, HHI explained that it had provided these charts in its Section A Response, and provided them again.  *Large Power Transformers from South Korea: Second Sales Supplemental Response*, June 19, 2017, at 4 (ACCESS Barcode 3583192-01–3583192-07) ("*Second Sales Supplemental Response*").   The *Second Sales Supplemental Questionnaire* also asked Hyundai to "describe in detail Hyundai's relationship with each of its sales agents."  *Second Sales Supplemental Questionnaire* at 30.  Hyundai responded that it "is not affiliated with any of its sales agents."  *Second Sales Supplemental Response* at 81 and Attachment 2nd SS-89.

16.     Additionally, the *Second Sales Supplemental Questionnaire* requested that Hyundai "provide complete sales and expense documentation" for a number of home-market and US sales.  *Second Sales Supplemental Questionnaire* at 13-14.   Hyundai complied with the Department's request.  *Large Power Transformers from South Korea: 2nd Supplemental Sales*

*Response to Questions 42, 47-50, 52, 54, 55, and 77*, June 26, 2017, at 1-2 (ACCESS Barcode 3585767-01); *see also id.* at Attachment 2nd SS-94 (ACCESS Barcode 3585780-01–3585780-02).

17.     On July 10, 2017, HHI, its counsel, and trade consultants again requested a meeting with Department officials to discuss, in part, "the 'accessories' issue raised in HHI's responses and previous submissions." *Large Power Transformers from Korea: Request for Meeting*, Jul. 10, 2017 (ACCESS Barcode 3591268-01).

18.     HHI finally met with the Department on July 14, 2017, over three months after HHI's *Request for Clarification* was filed and it originally proposed a meeting.  HHI "offered to supply further information to assist the Department's understanding of the 'accessories' issues, including, for example, the bills of materials for the LPTs involved in the reported sales transactions." *Id.* at 5.  HHI noted that "it would be productive for the Department to articulate the role that 'accessories' will play in the calculation of the dumping margins" and that, "to the extent that the Department requires additional information to elucidate this issue (in addition to the vast quantity of data that Hyundai has already submitted), adequate time remains for the Department to issue supplemental questionnaires before the upcoming cost and sales verifications." *Id.* at 6.

19.     The Department did not seek any further data regarding "accessories."  Instead, on September 7, 2017, the Department published notice of the preliminary results in the *Federal Register* and assigned HHI a dumping rate of 60.81 percent based on total AFA.  *Large Power Transformers From the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review; 2015-2016*, 82 Fed. Reg. 42289 (Sept. 7, 2017) ("*Preliminary Results*"); *see also* accompanying *Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: Large Power Transformers from the Republic of Korea; 2015-2016*

(Aug. 31, 2017) ("*Prelim Decision Memo*").  The Department applied total AFA to Hyundai on the basis of HHI's (1) purported "failure" to separately report the prices and costs of "accessories;" (2) alleged "understatement" of home-market gross unit prices; and (3) allegedly "undisclosed" relationship with a US sales agent.  *Prelim Decision Memo* at 12-18.

20.     With respect to "accessories," the Department accused Hyundai of "refus{ing} to provide" information related to "accessories" and of "attempt{ing} to place the burden on the Department to define the term 'accessories.'"  *Id.* at 16.  Remarkably, after inviting HHI to request guidance in the *POR3 Final Results*, the Department now claimed "***It is not the Department's responsibility to provide the definition of what constitutes 'accessories{.}*'"  *Id.* (emphasis added).

21.     With respect to the alleged "understatement" of gross unit prices, the Department contended, for the first time, that "Hyundai improperly reported its home market gross unit prices for certain home market sales."  *Id.* at 18.  Specifically, the Department contended that HHI omitted the value of certain components from the home-market gross unit prices.  *See id.*

22.     Finally, the Department alleged that "Hyundai did not disclose its relationship with a sales agent."  The Department had not raised this issue before or requested clarification of the reported information regarding affiliates.  Instead, the Department theorized that the person was affiliated with HHI because he "uses an email address that belongs to HHI" and "uses a title and a division that belong to HHI."  *Id.*; *Analysis of Data/Questionnaire Responses Submitted by Hyundai Heavy Industries Co., Ltd. in the Preliminary Results of the 2015-2016 Administrative Review of the Antidumping Duty Order on Large Power Transformers from the Republic of Korea*, Aug. 31, 2017, at 5 (ACCESS Barcode 3616335-01) ("*Prelim Analysis Memo*").

23.     On September 21, 2017, HHI submitted Post-Preliminary Comments, in which it submitted new information, pursuant to 19 C.F.R. § 351.301(c)(4), in response to the

Department's factual assertion in the *Preliminary Results* that the sales agent "uses an email address ***that belongs*** to HHI" and "uses a title and a division ***that belong*** to HHI."   The Department rejected the submission, contending that:

> Hyundai claims that the Department's preliminary results constitute factual information being placed on the record by the Department, pursuant to 19 CFR 351.301(c)(4), whereby Hyundai is afforded one opportunity to rebut, clarify, or correct such factual information.  However, the Department's preliminary results do not constitute factual information as defined under 19 CFR 351.102(b)(21)(iv), and, thus, is not factual information placed on the record by the Department under 19 CFR 351.301(c)(4).  The Department's preliminary results present analyses and conclusions based on factual information already present on the record. Hyundai, therefore, has not submitted factual information to rebut, clarify, or correct factual information placed on the record by the Department.  Instead, Hyundai's submission constitutes untimely and unsolicited written argument, which contains new factual information.  Therefore, the Department is rejecting this submission in its entirety in accordance with 19 CFR 351.302(d) and 19 CFR 351.104(a)(2).

Memorandum From Moses Y. Song to The File, *2015-2016 Administrative Review of the Antidumping Duty Order on Large Power Transformers from the Republic of Korea: Request to Reject and Remove File*, Oct. 4, 2017 (ACCESS Barcode 3626017-01).  On October 5, 2017, HHI resubmitted its *Post-Preliminary Comments* without the alleged "new factual information." *See generally Large Power Transformers from South Korea: Resubmission of Post-Preliminary Comments*, Oct. 5, 2017 (ACCESS Barcode 3626576-01).

24.    In its *Post-Preliminary Comments*, HHI urged the Department to conduct sales and cost verifications, as previously planned, in order to "review the data more closely with Hyundai personnel and to clarify any questions it may have." *Id.* at 2-3.

25.    HHI submitted its case brief on October 12, 2017.  *Large Power Transformers from Korea:  Hyundai's Case Brief*, Oct. 12, 2017 (ACCESS Barcode 3629483-01).  HHI explained that the Department's application of total AFA was unfounded.  First, HHI highlighted its extensive efforts to work with the Department to establish a uniform definition of "accessories."

*See generally id.* at 7-36.   Second, HHI explained that the component that the Department claimed improperly was excluded from the gross unit prices reported in the home-market sales database was for non-subject merchandise.   *Id.* at 37.   Third, HHI demonstrated that the Department's conclusion that the sales agent was "affiliated" with HHI was not supported by record evidence and that the Department had violated its regulations in rejecting the factual information that HHI had attempted to submit on this issue.   *Id.* at 44-48.

26.     The Department published the *POR4 Final Results* on March 16, 2018.   83 Fed. Reg. at 11679.   It made no change to the *Preliminary Results*.   *Compare id. with Preliminary Results*. The Department assigned HHI a final dumping margin of 60.81 percent.   *POR4 Final Results*, 83 Fed. Reg. at 11680.

## STATEMENT OF CLAIMS

## COUNT 1:  REPORTING OF "ACCESSORIES"

27.     Paragraphs 5 through 26 are incorporated by reference.

28.     By statute, the Department must meet the four criteria to use AFA with respect to any information submitted by a respondent:

- The Department must determine that necessary information is not available on the record, has not been provided in a timely or verifiable manner, or that the respondent has otherwise significantly impeded the proceeding.  *See* 19 U.S.C. § 1677e(a).

- If the Department "determines that a response to a request for information … does not comply with the request," it must "promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency{.}"  19  U.S.C. § 1677m(d).

- The Department must find that the respondent, among other things, failed to provide information that is timely, verifiable, sufficiently complete, and can be used without undue difficulties.  19 U.S.C. § 1677m(e).

- The Department must find "that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b).

29.    The Department's application of these statutory criteria to HHI with respect to its reporting of "accessories" was unsupported by substantial evidence and contrary to law.

30.    Among other things, record evidence demonstrates that (1) HHI provided the requested information; (2) the Department did not promptly notify HHI of a deficiency in the reported information and provide an opportunity to cure it; and (3) HHI cooperated to the best of its ability, including by making its *Request for Clarification* of the term "accessories" and seeking to meet with the Department to resolve the issue.

## COUNT 2:  REPORTING OF HOME-MARKET GROSS UNIT PRICE

31.    Paragraphs 5 through 26 and 28 are incorporated by reference.

32.    The Department's application of the statutory criteria for applying AFA to HHI with respect to its reporting of home-market gross unit prices was unsupported by substantial evidence and contrary to law.

33.    Among other things, record evidence demonstrates that (1) HHI provided the requested information; (2) the Department did not promptly notify HHI of a deficiency in its reported information and provide an opportunity to cure it; and (3) HHI cooperated to the best of its ability.  In particular, the Department ignored evidence showing that the component at issue was non-subject merchandise and, therefore, the value of the component was properly excluded from the reported gross unit price.

## COUNT 3:  AFFILIATED SALES AGENT

34.    Paragraphs 5 through 26 and 28 are incorporated by reference.

35.     The Department's application of the statutory criteria for applying AFA to HHI with respect to its reporting of an allegedly affiliated sales agent was unsupported by substantial evidence and contrary to law.

36.     Among other things, record evidence demonstrates that (1) HHI provided the requested information regarding its affiliated agents; (2) the Department did not promptly notify HHI of a deficiency in the reported information and provide an opportunity to cure it; and (3) HHI cooperated to the best of its ability.

## COUNT 4:  REJECTION OF REBUTTAL FACTUAL INFORMATION

37.     Paragraphs 5 through 26 are incorporated by reference.

38.     The Department erroneously rejected the factual information submitted by Hyundai on September 21, 2017, which was submitted in response to new factual information placed on record by the Department in the *Preliminary Determination* that a sales agent of Hyundai agent "uses an email address ***that belongs*** to HHI" and "uses a title and a division ***that belong*** to HHI." The rejection of the rebuttal factual information was not in accordance with the Department's regulations, and therefore contrary to law.   The Department should have accepted this information and considered it in reaching the *POR4 Final Results*.

## COUNT 5:  TOTAL AFA

39.     Paragraphs 5 through 26 are incorporated by reference.

40.     The Department did not have grounds in the *POR4 Final Results*, under 19 U.S.C. § 1677e(a) and 19 U.S.C. § 1677m, to use total facts otherwise available in place of HHI's reported data, or under 19 U.S.C. § 1677e(b) to draw an adverse inference.   As discussed above in Counts 1 through 3, each of the grounds cited by the Department as justification for disregarding HHI's reported data and drawing an adverse inference is unsupported by substantial evidence and/or is not in accordance with law.

## PRAYER FOR RELIEF AND JUDGMENT

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)     Enter judgment in favor of Plaintiff;

(B)     Hold and declare that the 60.81 percent dumping margin assigned by the Department to HHI in the *POR4 Final Results* on the basis of total AFA is unsupported by substantial evidence and otherwise not in accordance with law;

(C)     Remand this matter to the Department for reconsideration of each of the three justifications that the Department used to support the application of total AFA in the *POR4 Final Results* and to issue revised final results in conformity with the Court's decision; and

(D)     Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

  /s/ David E. Bond
David E. Bond
William J. Moran
Ron Kendler[*]
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Date:  March 30, 2018

---

[*] Not engaged in the practice of law in the District of Columbia.  Work performed under the supervision of principals of the firm who are members of the District of Columbia Bar.  Licensed only in the Commonwealth of Massachusetts and in the State of New York.