Slip Op. 20-165

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI HEAVY INDUSTRIES CO., LTD.,<br><br>Plaintiff,<br><br>and<br><br>HYOSUNG CORPORATION AND ILJIN ELECTRIC CO., LTD.,<br><br>Consolidated Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>ABB ENTERPRISE SOFTWARE INC.,<br><br>Defendant-Intervenor. | Before: Mark A. Barnett, Judge<br>Consol. Court No. 18-00066<br><br>**Public Version** |

### OPINION AND ORDER

[Remanding the U.S. Department of Commerce's remand redetermination of the final results of the fourth administrative review of the antidumping duty order on large power transformers from the Republic of Korea.  Denying as moot Consolidated Plaintiff's motion for leave to file supplemental brief.]

Dated: November 18, 2020

Ron Kendler, White & Case LLP, of Washington, DC, argued for Plaintiff Hyundai Heavy Industries, Co., Ltd.  With him on the brief were David E. Bond and William J. Moran.

Daniel R. Wilson and Henry D. Almond, Arnold & Porter Kaye Scholer LLP, of Washington, DC, argued for Consolidated Plaintiff Hyosung Corporation.  With them on the brief were J. David Park and Leslie C. Bailey.

<u>Amrietha Nellan</u> and <u>Jeffrey M. Winton</u>, Winton & Chapman PLLC, of Washington, DC, argued for Consolidated Plaintiff ILJIN Electric Co., Ltd.  With them on brief was <u>Vi N. Mai</u>.

<u>Kelly A. Krystyniak</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant.  With her on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>L. Misha Preheim</u>, Assistant Director.  Of counsel on the brief was <u>David W. Richardson</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Melissa M. Brewer</u> and <u>David C. Smith</u>, Kelley Drye & Warren LLP, of Washington, DC, argued for Defendant-Intervenor ABB Enterprise Software Inc.  With them on the brief was <u>R. Alan Luberda</u>.

Barnett, Judge: This matter is before the court following the U.S. Department of

Commerce's ("Commerce" or "the agency") remand redetermination of the final results

of the fourth administrative review ("AR4") of the antidumping duty order on large power

transformers ("LPTs") from the Republic of Korea for the period of review ("POR")

August 1, 2015, to July 31, 2016.[1]  *See* Final Results of Remand Redetermination

Pursuant to Court Remand ("Remand Results"), ECF No. 91-1; *see generally Hyundai*

*Heavy Indus. v. United States* ("*HHI (AR4) I*"), 43 CIT ___, 393 F. Supp. 3d 1293

---

[1] The administrative record for this case is divided into a Public Administrative Record ("PR"), ECF No. 19-4, and a Confidential Administrative Record ("CR"), ECF Nos. 19-2, 19-3.  For the court's review of the *Final Results*, the Parties submitted joint appendices containing record documents cited in their briefs.  *See* Public J.A., ECF Nos. 61-1 (Vol. I), 61-2 (Vol. II), 61-3 (Vol. III), 61-4 (Vol. IV); Confidential J.A. ("CJA"), ECF Nos. 60-1 (Vol. I), 60-2 (Vol. II), 60-3 (Vol. III), 60-4 (Vol. IV).  The administrative record associated with the Remand Results is contained in an Amended Public Remand Record ("RPR"), ECF No. 125-2, and an Amended Confidential Remand Record ("RCR"), ECF No. 125-3.  Parties submitted public and confidential joint appendices containing record documents cited in their briefs on the Remand Results.  *See* Public Index to Remand J.A., ECF No. 132-1; Confidential Index to Remand J.A. ("RCJA"), ECF No. 131-1.  Citations are to the confidential joint appendices unless stated otherwise.

(2019); *Large Power Transformers From the Republic of Korea*, 83 Fed. Reg. 11,679

(Dep't Commerce Mar. 6, 2018) (final results of antidumping duty admin. review; 2015–

2016) ("*Final Results*"), ECF No. 19-5, and accompanying Issues and Decision Mem.,

A-580-867 (Mar. 9, 2018) ("I&D Mem."), ECF No. 19-6.

On October 14, 2016, Commerce initiated this fourth administrative review.  *See*

*Initiation of Antidumping and Countervailing Duty Admin. Reviews*, 81 Fed. Reg.

71,061, 71,063 (Dep't Commerce Oct. 14, 2016), PR 6, CJA (Vol. III) Tab 6 ("*Initiation*

*Notice*").  Commerce limited its examination to Plaintiff Hyundai Heavy Industries Co.,

Ltd. ("HHI")[2] and Consolidated Plaintiff Hyosung Corporation ("Hyosung").  *See*

Respondent Selection Mem. (Jan. 3, 2017) ("Selection Mem.") at 6, PR 22, CJA (Vol.

III) Tab 8.  Consolidated Plaintiff ILJIN Electric Co., Ltd. ("Iljin") was one of the non-

individually examined respondents.  *See Initiation Notice*, 81 Fed. Reg. at 71,063;

Selection Mem. at 6.

For the *Final Results*, Commerce assigned Hyosung and HHI weighted-average

dumping margins of 60.81 percent based on total adverse facts available (or "total

AFA").  83 Fed. Reg. at 11,680.[3]  Commerce assigned the same rate to the non-

individually examined respondents (including Iljin).  *See* I&D Mem. at 3.

---

[2] Hyundai Electric & Energy Systems Co., Ltd. is the successor-in-interest to HHI.  Ltr. from David E. Bond, Attorney, White & Case LLP, to the Court (Sept. 12, 2018), ECF No. 32.

[3] Commerce selected the 60.81 percent rate on the basis that it was the AFA rate assigned to HHI in the third administrative review ("AR3").  Decision Mem. for Prelim. Results of Antidumping Duty Admin. Review (Aug. 31, 2017) ("Prelim. Mem.") at 6 & n.22, PR 260, CJA (Vol. IV) Tab 5.

Hyosung, HHI, and Iljin each filed motions for judgment on the agency record challenging different aspects of Commerce's decision. *See HHI (AR4) I*, 393 F. Supp. 3d at 1299–1300. The Government, on behalf of Commerce, moved to remand the matter in its entirety. *Id*. at 1298. The court denied the Government's motion, *id.* at 1301–02, and remanded the *Final Results* for reconsideration or further explanation regarding Commerce's reliance on total AFA for both Hyosung and HHI, *id.* at 1310–12, 1318–20. Relevant to this discussion, with respect to Hyosung, the court was not able to discern Commerce's reasoning for finding that a certain invoice series covering multiple sales across multiple review periods was unreliable, *id.* at 1308–10, and held that the agency failed to support adequately its finding that Hyosung's reporting of certain price adjustments and discounts was grounds for total AFA, *id.* at 1310–12.

With respect to HHI, the court found that substantial evidence did not support the agency's reliance on total AFA based on HHI's reporting of accessories. *See id.* at 1313–17. The court also found that while substantial evidence supported Commerce's finding that the record was ambiguous regarding whether HHI reliably and accurately reported home market gross unit prices, the court directed Commerce to revisit this issue on remand because it appeared to be related to the accessories issue. *Id*. at 1317–18. The court deferred ruling on Iljin's motion because the issues raised therein could become moot on remand. *Id*. at 1321.

On remand, with respect to Hyosung, Commerce continued to rely on total AFA based on Hyosung's failure to report reliably price adjustments associated with U.S. sales. Remand Results at 11–15. However, the agency found that Hyosung's

overlapping invoice series was not grounds for total AFA.  *See id.* at 45–50.  With

respect to HHI, Commerce determined that HHI had inconsistently reported certain

parts as foreign like product in reporting the gross-unit prices of home market sales.  *Id.*

at 16–18.  Thus, the agency found HHI's home market sales database was unreliable,

warranting reliance on total AFA.  *Id.* at 18–19.  Finally, Commerce continued to assign

Iljin an all-others rate based on the average of the AFA margins of the individually

examined respondents.  *Id.* at 24.

      Hyosung and HHI each filed comments challenging Commerce's reliance on total

AFA to determine each of their margins.  *See* Hyosung's Cmts. on Final Reman Results

("Hyosung Opp'n Cmts."), ECF No. 100; Confidential Pl.'s Cmts. in Opp'n to the Final

Results of Redetermination Pursuant to Court Remand ("HHI Opp'n Cmts."), ECF No.

103.  Defendant-Intervenor ABB Enterprise Software Inc. ("ABB") filed comments

supporting Commerce's reliance on total AFA for Hyosung and HHI.  *See* Confidential

Def.-Int. ABB's Cmts. in Supp. of Remand Redetermination ("ABB Supp. Cmts."), ECF

No. 121.  Iljin filed comments arguing that Commerce may not determine the all-others

rate by averaging the rates of individually examined respondents when each of which

was determined using total AFA.  *See* Cmts. of [Iljin] ("Iljin Opp'n Cmts."), ECF No. 97.

Iljin subsequently filed a motion to supplement its comments with a brief addressing

additional authority.  *See* Mot. of Pl. [Iljin] for Leave of Court to File Suppl. Br. and

accompanying proposed Suppl. Br., ECF No. 139.

      ABB filed comments contending that substantial evidence does not support

Commerce's finding that Hyosung's overlapping invoice series was reliable and

challenging Commerce's findings that HHI had reliably reported information concerning service-related revenue, spare parts, and cost of production.  *See* Confidential ABB's Cmts. in Opp'n to Remand Results ("ABB Opp'n Cmts."), ECF No. 101.  In response, Hyosung and HHI filed comments supporting Commerce's Remand Results with respect to these issues.  *See* Confidential Hyosung's Cmts. in Supp. of Final Remand Results Regarding Overlapping Invoice Issue ("Hyosung Supp. Cmts."), ECF No. 116; Confidential Pl.'s Am. Responsive Cmts. in Supp. of the Final Results of Redetermination Pursuant to Court Remand ("HHI Supp. Cmts."), ECF No. 129.

The Government filed comments in support of the Remand Results.  Confidential Def.'s Resp. to Cmts. on Remand Redetermination ("Gov't Resp."), ECF No. 114.

For the reasons discussed below, Commerce's Remand Results are remanded to Commerce to clarify or reconsider its decision not to issue a supplemental questionnaire to Hyosung and its reliance on total AFA for HHI.  Because Commerce may choose not to rely on total AFA for Hyosung and/or HHI on remand, the court defers ruling on Iljin's arguments and denies Iljin's Motion to file a Supplemental Brief as moot.  The agency's Remand Results are otherwise sustained.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[4] and 28 U.S.C. § 1581(c) (2018).  The court will uphold an agency determination that is supported by substantial

---

[4] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise stated.

evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  "The

results of a redetermination pursuant to court remand are also reviewed for compliance

with the court's remand order."  *Solar World Ams., Inc. v. United States*, 41 CIT ___,

___, 273 F. Supp. 3d 1314, 1317 (2017) (quoting *Xinjiamei Furniture (Zhangzhou) Co.

v. United States*, 38 CIT ___, ___, 968 F. Supp. 2d 1255, 1259 (2014)).

D<small>ISCUSSION</small>

### I.   Legal Framework

When necessary information is not available on the record, or an interested party

withholds information requested by Commerce, fails to provide requested information by

the submission deadline, significantly impedes a proceeding, or provides information

that cannot be verified pursuant to 19 U.S.C. § 1677m(i), Commerce "shall . . . use the

facts otherwise available."  19 U.S.C. § 1677e(a).  Commerce's authority to use the

facts otherwise available is subject to 19 U.S.C. § 1677m(d) and (e).  *Id*.  Pursuant to

section 1677m(d), if Commerce determines that a respondent has not complied with a

request for information, it must promptly inform that respondent of the nature of the

deficiency and, to the extent practicable in light of statutory deadlines, provide "an

opportunity to remedy or explain the deficiency."  Pursuant to subsection (e), Commerce

"shall not decline to consider information that is submitted by an interested party" and

that satisfies the following requirements:

> (1) the information is submitted by the deadline established for its submission,
> (2) the information can be verified,
> (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,

>    (4) the interested party has demonstrated that it acted to the best of its
>    ability in providing the information and meeting the requirements
>    established by the administering authority or the Commission with respect
>    to the information, and
>    (5) the information can be used without undue difficulties.

*Id*. § 1677m(e).  Commerce does not violate 19 U.S.C. § 1677m(e) when it rejects

information that does not meet all five requirements.  *See Papierfabrik Aug. Koehler SE*

*v. United States*, 843 F.3d 1373, 1382–83 (Fed. Cir. 2016).

If Commerce determines that the party "has failed to cooperate by not acting to

the best of its ability to comply with a request for information," Commerce "may use an

inference that is adverse to the interests of that party in selecting from among the facts

otherwise available."  19 U.S.C. § 1677e(b).  "Compliance with the 'best of its ability'

standard is determined by assessing whether a respondent has put forth its maximum

effort to provide Commerce with full and complete answers to all inquiries in an

investigation."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir.

2003).  Commerce uses total adverse facts available when "none of the reported data is

reliable or usable," such as when all of the "submitted data exhibit[] pervasive and

persistent deficiencies that cut across all aspects of the data."  *Zhejiang DunAn Hetian*

*Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) (citing *Steel Auth. of*

*India, Ltd. v. United States*, 25 CIT 482, 487, 149 F. Supp. 2d 921, 928–29 (2001)).

## II.   Issues Concerning Hyosung

### A.  Application of Total AFA

#### 1.  Additional Background

Commerce determined that Hyosung failed to report price adjustments[5] reliably

and accurately (i.e., interest payments, and discounts) for U.S. sales and to act to the

best of its ability to comply with Commerce's information requests.  Remand Results at

11–15.  While Hyosung supplied the information that Commerce cites as the basis of

the reporting deficiency more than two months before issuing the *Preliminary Results*,[6]

the agency did not provide Hyosung an opportunity to remedy or explain the deficiency

before resorting to total AFA.  *See id.* at 14–15.  The court has previously recognized

that Hyosung's reporting of price adjustments and interest charges was deficient.  *See*

*HHI (AR4) I*, 393 F. Supp. 3d at 1311 (finding that substantial evidence supports

---

[5] The Remand Results use the terms "price adjustment" and "sales adjustment" interchangeably in discussing Hyosung's reporting.  *See, e.g.*, Remand Results at 14, 55.  To avoid confusion, the court refers to these adjustments as "price adjustments."

[6] On May 31, 2017, Commerce issued the "Third Supplemental Questionnaire," seeking supplemental information on Hyosung's response to the Initial Sections B and C Questionnaire.  *See* Hyosung Third Suppl. Questionnaire.  Hyosung submitted its response to that questionnaire on June 21, 2017.  *See* Resp. of Hyosung Corp. to the Dep't's May 26, 2017 Third Sales Suppl. Questionnaire (June 21, 2017) ("Hyosung 3SQR"), CR 449, PR 216, RCJA Tab 16.  The court notes that the cover page to the response (as compared to the cover letter) refers to Commerce's "May 26, 2017 Second Sales Supplemental Questionnaire."  *Cf.* Remand Results at 12 n.45 (referring to Commerce's Third Supplemental Questionnaire, dated May 26, 2017, as the "Second Sales Supplemental Questionnaire").  The court's review of the administrative record indices filed in this case indicates that Commerce's Third Supplemental Questionnaire was the second supplemental questionnaire issued in relation to Hyosung's sales information (inclusive of Section A), but was the first supplemental questionnaire specific to Hyosung's Sections B and C Questionnaire response.  *See, e.g.*, Public Index to Admin. R. at 10, 13, ECF No. 19-4. Nevertheless, the court refers to this document as Hyosung's response to the Third Supplemental Questionnaire.

"Commerce's finding that Hyosung's reporting of gross unit prices as well as discounts and interest charges was deficient").

In the Initial Section C Questionnaire, Commerce instructed Hyosung to report discounts separately from the gross unit prices of LPTs for U.S. sales. *See* Request for Information (Jan. 5, 2017) ("Hyosung Initial Questionnaire") at C-19, PR 25, RCJA Tab 4. Commerce also instructed Hyosung to identify interest payments tied to any U.S. sales, *id.* at C-17, and report warehousing expenses incurred in the United States, *id.* at C-26. In response, Hyosung reported that its U.S. affiliate, HICO America, did not provide any discounts. *See* Response of Hyosung Corp. to the Dep't's Jan. 5, 2017 Sec. [C] Questionnaire (Feb. 27, 2017) ("Hyosung CQR") at C-25 to C-26, CR 158, RCJA Tab 8; *id.* at C-21 to C-23 (Hyosung reporting gross unit prices without reference to any discounts). Although Hyosung reported that it did not incur warehousing expenses in the United States, *see id.* at C-32, it reported warehousing revenue associated with U.S. sales. *see id.* at C-23 to C-24.

In the Third Supplemental Questionnaire, Commerce instructed Hyosung to explain the "circumstances under which Hyosung charged U.S. customers for storage." Third Suppl. Questionnaire (May 26, 2017) ("Hyosung Third Suppl. Questionnaire") at 10, PR 177, CR 328, CJA Tab 7. This questionnaire also requested information regarding Hyosung's reported storage revenue and requested that Hyundai explain if HICO America provided and charged for storage services in the United States. *Id.* at 10–11. Commerce also requested "complete sales and expense documentation" for certain U.S. sales. *Id.* at 5.

In response, Hyosung reported that for six U.S. sales,[7] HICO America stored the subject LPTs in a warehouse at the U.S. port.  Hyosung 3SQR at 30; *see also id.*, Ex. SBC-9 (containing invoices indicating storage at the U.S. port).  Accordingly, Hyosung reported storage expenses in the United States.  *See* Draft Results of Redetermination Pursuant to Court Remand (Nov. 21, 2019) ("Draft Results") at 17, RCR 1, RPR 1, RCJA Tab 31.  Commerce did not request, and Hyosung did not report, any new information regarding discounts or interest.  *See id.*

Upon review of the sales documentation provided for the U.S. sales, Commerce found that Hyosung had provided, but not separately reported, discounts for two U.S. sales and charged, but not separately reported, interest associated with a third sale.  *Id.* at 17–18; *see also* Hyosung 3SQR, Ex. SBC-9.  Thereafter, Commerce did not, however, provide Hyosung an opportunity to address and correct these unreported price adjustments.  *See* Draft Results at 18–19; I&D Mem. at 31–32.  In its previous opinion, the court found that substantial evidence supported Commerce's conclusion that Hyosung failed to report adequately discounts and interest charges; however, the court remanded the agency's reliance on total AFA, explaining that Commerce did not adequately support its refusal to issue a supplemental questionnaire or its finding that Hyosung failed to act to best of its ability.  *See HHI (AR4) I*, 393 F. Supp. 3d at 1311–12.

---

[7] These transactions, identified by U.S. sales sequence numbers ("SEQUs"), are SEQUs [[                                        ]].  Hyosung 3SQR at 27–28.

On remand, Commerce again found that Hyosung's failure to report properly price adjustments for U.S. sales warranted total AFA.  *See* Remand Results at 14–15. According to Commerce, Hyosung had the opportunity to report price adjustments in response to the Initial Section C Questionnaire and the Third Supplemental Questionnaire,[8] the latter of which "requested clarification of a deficiency regarding sales adjustments that [Commerce] identified in review of the original questionnaire response."  *Id.* at 55. The agency explained that it was unable to conclude that the "the reported gross unit prices are accurate," which undermined the reliability of the U.S. sales database.  *Id.* at 56.

Commerce relied on the court's holding in *ABB Inc. v. United States* ("*ABB (AR2) II*"), 42 CIT ___, 355 F. Supp. 3d 1206 (2018), to find that the agency was not obligated to issue a supplemental questionnaire.  *Id.* at 54.  Commerce explained that it is not obligated to issue a supplemental questionnaire if it lacks a basis to suspect a reporting deficiency.  *Id.* at 54 & n.279 (citing *ABB (AR2) II*, 355 F. Supp. 3d at 1222). Commerce stated that it did not have any reason to believe that Hyosung's reporting was deficient prior to Hyosung's response to the Third Supplemental Questionnaire and, thus, the agency stated that it was not obligated to issue a supplemental questionnaire.  *Id.* at 55.

---

[8] While Commerce in this instance refers to "the first supplemental questionnaire," the court understands Commerce's explanation to pertain to the first supplemental questionnaire specific to Hyosung's Sections B and C questionnaire response, i.e., the Third Supplemental Questionnaire.  *See supra* note 6; Remand Results at 12–13 (explaining that Commerce issued the Third Supplemental Questionnaire in response to Hyosung's response to the initial Sections B and C Questionnaire).

Commerce found that Hyosung's conduct warranted an adverse inference because Hyosung failed to provide complete and accurate price adjustment information even though it possessed the information and Commerce specifically requested it.  *Id.* at 14–15, 56–61.

### 2.  Parties' Arguments

Hyosung contends that Commerce's reliance on total AFA is not in accordance with law because the agency did not comply with 19 U.S.C. § 1677m(d).  Hyosung Opp'n Cmts. at 5–6.  Hyosung argues that the agency erroneously construed the court's holding in *ABB (AR2) II* to support its failure to issue a supplemental questionnaire.  *Id.* at 6–8.  Hyosung further contends that nothing in the Third Supplemental Questionnaire would have informed Hyosung that Commerce was seeking information regarding discounts or interest charges so as to fulfill Commerce's obligations pursuant to 19 U.S.C. § 1677m(d).  *Id.* at 9-10.  Hyosung also argues that its failure to separately report discounts and interest charges "could not have affected Commerce's margin calculation to Hyosung's advantage" and was not systemic so as to warrant total AFA.  *See id.* at 12 (citing *Ferro Union, Inc. v. United States*, 23 CIT 178, 201, 44 F. Supp. 2d 1310, 1332 (1999)).  Finally, Hyosung avers that Commerce failed to support its use of an adverse inference.  *Id.* at 11–12.

The Government contends that Commerce properly relied on *ABB (AR2) II* because "Commerce cannot know that a questionnaire response is incomplete or inaccurate if the respondent has submitted a seemingly complete response."  Gov't Resp. at 37.  The Government argues that Commerce did not have notice that Hyosung

inconsistently reported price adjustments until Hyosung responded to the Third

Supplemental Questionnaire, by which point it was "only two months before the

preliminary results were issued."  *Id.* at 36; *see also* ABB Supp. Cmts. at 2–4.  The

Government also contends that there is no requirement for Hyosung's reporting to be

"riddled with unexplained deficiencies" to justify total AFA.  *See* Gov't Resp. at 40

(citation omitted).  Citing *Hyundai Heavy Industries v. United States* ("*HHI (AR3) II*"), 43

CIT ___, ___, 399 F. Supp. 3d 1305, 1313–14 (2019), the Government argues that the

failure to reliably report U.S. sales "is sufficient for Commerce to resort to [total AFA]."

*Id.*; *see also* ABB Supp. Cmts. at 10–11.

### 3.  Commerce's Failure to Issue a Supplemental Questionnaire was not in Accordance with 19 U.S.C. § 1677m(d)

Pursuant to 19 U.S.C. § 1677m(d), if Commerce finds that a party's response to

an information request is deficient, Commerce "shall promptly inform the [party]

submitting the response of the nature of the deficiency and shall, to the extent

practicable, provide that [party] with an opportunity to remedy or explain the deficiency

in light of the time limits established for the completion of the investigation or review."

The Government argues that, pursuant to *ABB (AR2) II*, if a respondent provides a

seemingly complete response to a questionnaire, Commerce is not expected to issue a

supplemental questionnaire.  Gov't Resp. at 37.  In *ABB (AR2) II*, Commerce sought

information regarding the respondent's reporting of service-related revenue.  355 F.

Supp. 3d at 1217–18.  "[Respondent] provided a seemingly complete response to

Commerce's initial questionnaire, and responded to Commerce's supplemental

questionnaire stating that it separately reported service-related revenues and expenses

consistent with the original investigation." *See id.* at 1222.  Only when reviewing

documentation during verification did Commerce discover that the respondent had not

properly reported service-related revenue.  *Id*. at 1221–22.  The court found that, under

those circumstances, Commerce was not obligated to issue another questionnaire

pursuant to 19 U.S.C. § 1677m(d) at or after verification because the respondent's

responses to the supplemental questionnaires did not alert the agency to a potential

reporting deficiency.  *Id*. at 1222–23.

      Here, unlike in *ABB (AR2) II*, the Government acknowledged that Hyosung

provided the information that ultimately alerted Commerce of Hyosung's reporting

deficiencies two months before Commerce issued the *Preliminary Results*.  *See* Gov't

Resp. at 36; *see also* Remand Results at 55 (stating that Commerce became aware of

the reporting deficiencies "after receiving Hyosung's response" to the Third

Supplemental Questionnaire).  While the Government rejects Hyosung's effort to

distinguish *ABB (AR2) II,* claiming that its holding is not limited to a situation in which

Commerce conducts verification, neither the Government nor Commerce, in the first

instance, address the relevant statutory standard: "practicability."[9]  Regardless of

whether verification occurs, the relevant inquiry is whether it was practicable for

---

[9] While the Government contended that when Commerce learned of Hyosung's
reporting deficiency it was too late in the review for Commerce to issue a supplemental
questionnaire, Gov't Resp. at 36, at oral argument, the Government conceded that
Commerce did not provide such reasoning in the Remand Results.  *See* Oral Arg. at
08:20–9:23 (time stamp from the recording).  Thus, the court rejects this argument as
inappropriate *post-hoc* reasoning of counsel.  *See Burlington Truck Lines, Inc. v. United
States*, 371 U.S. 156, 168–69 (1962).

Commerce to provide Hyosung an opportunity to remedy or explain the deficiency.  *See*
19 U.S.C. § 1677m(d).  In *ABB (AR2) II*, Commerce became aware of the deficiency
based upon information reviewed at verification; thus, the court accepted that it was not
practicable for Commerce to provide the respondent an opportunity to remedy or
address the deficiency.  355 F. Supp. 3d at 1221–23.  In contrast, here, Commerce
received the deficient response two months before the *Preliminary Results* and the
agency provides no basis for finding that it was not practicable to have provided the
respondent an opportunity to remedy or explain the deficiency.  The court cannot fill that
gap in the agency's reasoning.  Simply put, absent a reasonable explanation for why it
was impracticable for Commerce to provide Hyosung with an opportunity to remedy or
explain its failure to report properly its discounts and interest charges, Commerce's
rejection of Hyosung's entire database in favor of the use of total adverse facts available
is not in accordance with law.

        The court also rejects Commerce's assertion that its requests for warehousing
revenue and expense data in the Third Supplemental Questionnaire satisfied the
agency's obligation to alert Hyosung of reporting deficiencies concerning price
adjustments.  *See* Remand Results at 54–55.  A request for warehousing revenue and
expense data is not a request for interest charges and discounts.  Moreover, given that
Commerce stated that it was not aware of reporting deficiencies concerning discounts
and interest payments until it received Hyosung's Third Supplemental Questionnaire
Response, *id.* at 55 & nn.284–85 (citations omitted), the agency's asserted reliance on

the warehousing questions in the Third Supplemental Questionnaire to meet its

obligations pursuant to 19 U.S.C. § 1677m(d) is disingenuous, at best.

Commerce did not provide any other explanation supporting its failure to issue a

supplemental questionnaire.  Thus, the court finds that Commerce's determination to

rely on the facts otherwise available is not in accordance with law because Commerce

did not comply with 19 U.S.C. § 1677m(d).  The court remands this issue to Commerce

for reconsideration in accordance with this opinion.  The court defers consideration of

Commerce's use of total AFA (as opposed to partial AFA) and its use of an adverse

inference under either scenario because these issues may become moot upon

redetermination.

**B.  Overlapping Invoice Series**

**1.  Additional Background**

ABB challenges Commerce's determination that an invoice series covering

certain of Hyosung's sales that overlap two administrative review periods was not

grounds for total AFA.  *See* ABB Opp'n Cmts. at 2–9; *see generally* Remand Results at

45–50.  For the *Final Results*, Commerce concluded that it was unclear how multiple

sales across two administrative reviews could be contained in one invoice and found

that this issue supported the application of total AFA.  I&D Mem. at 30–31.  The court

remanded Commerce's determination because it could not discern the path of

Commerce's reasoning.  *HHI (AR4) I*, 393 F. Supp. 3d at 1309–10.  In the Draft

Remand Results, Commerce identified concerns regarding the number of line items as

compared to the number of corresponding LPTs in the invoices and the fact that the

invoice series covers multiple sales in AR4 and AR3 and, on these bases, preliminarily found that these invoices supported the use of total AFA.  Draft Results at 12–15.

Hyosung explained that the discrepancy between the line items and LPTs was due to a technical error that caused duplicate line items to appear in certain invoices. *See* Cmts. on Draft Remand Redetermination (Dec. 5, 2019) ("Hyosung Remand Case Br.") at 8–10, RCR 2, RPR 4, RCJA Tab 32.  Hyosung further explained that, consistent with the purchase order, the invoices represent progress payments and no single invoice represents payment in full for an LPT.  *See id.* at 6–10.  While the sum of the invoices on the record did not equal the total due under the purchase order, Remand Results at 47, Hyosung explained that one invoice was not on the record and had not been requested by Commerce, Hyosung Supp. Cmts. at 13–14.  Consistent with the terms of the purchase order, the amount due on the missing invoice would reconcile the invoice totals to the purchase order total.  *See* Gov't Resp. at 29; Hyosung Supp. Cmts. at 13–14.  Hyosung also clarified that one of the invoices in the series covered U.S. inland freight for the LPTs covered by the purchase order and not in satisfaction of the purchase order total.  Hyosung Remand Case Br. at 11.

In the Remand Results, Commerce accepted Hyosung's explanations as reasonable and found that the overlapping invoice series was not grounds to rely on total AFA.  Remand Results at 45–48.  Commerce thus rejected ABB's arguments that the invoices were not reliable.  *See id.* at 48–50.

### 2.  Substantial Evidence Supports Commerce's Acceptance of the Invoice Series

ABB raises several challenges to Commerce's acceptance of the invoices.  First, ABB argues that Commerce's findings in AR3 undermine Commerce's reliance on the invoices.  *See* ABB Opp'n Cmts. at 3.  Second, ABB asserts that inconsistencies between Commerce's findings and the reported invoices undermine Commerce's determination that the invoice series covers a certain number of LPTs; instead, ABB argues that Commerce should have found that the invoice series covers the sale of an additional LPT.  *See id*. at 3–4.  Third, ABB argues that Commerce incorrectly found that the payments reconcile to the total amount of the purchase order.  *See id*. at 7–9. Finally, ABB avers that the payments identified in the invoices cannot be related to the purchase order because, by the time they were issued, one of the LPTs in the purchase order had been damaged and scrapped.  *Id*. at 8–9.

In reviewing whether substantial evidence supports Commerce's determination, the court considers whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This standard requires Commerce to "examine the record and articulate a satisfactory explanation for its action."  *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).

Substantial evidence supports Commerce's conclusion that Hyosung properly documented and explained the overlapping invoices.  *See* Remand Results at 47–50. Commerce considered ABB's arguments and explained that Hyosung sufficiently

explained the contents of the invoices and reconciled them with the purchase order.

*See id*.  ABB's arguments to the court ignore that Commerce did not request the

missing invoice[10] and the agency credited Hyosung's explanations that the invoice

series was reliable even thought it was not complete.  *See id.* at 48 & n.239 (discussing

the agency's reasoning in AR3).  Hyosung has provided, and Commerce accepted, a

rational explanation addressing each of ABB's concerns.  The court will not reweigh this

evidence.  *See Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376–77

(Fed. Cir. 2015).  For these reasons, the court sustains Commerce's finding with

respect to the overlapping invoice series.

## III.   Issues Concerning HHI

### A. Application of Total AFA

#### 1. Additional Background

Commerce found that HHI failed to include certain LPT parts as foreign like

product in two home market sales, thereby understating the gross unit price for those

---

[10] Hyosung provided the invoices in response to Commerce's request to reconcile the number of LPT units sold during the POR to the number of units entered into the United States.  *See* Suppl. Questionnaire Resp. (May 8, 2017) at S-1, CR 274, PR 166, CJA (Vol. II) Tab 6.  Hyosung explained that one LPT was entered into the United States but not reported as a sale because the LPT unit was damaged and scrapped during the shipping process.  *See id.* at S-1.  Hyosung entered a replacement LPT unit after the POR but did not collect payment from the customer, thus explaining the difference between the number of LPT units sold and entered during the POR.  *See id.*  Hyosung provided the invoices in question as documentation supporting this explanation.  *See id.* at S-2, Ex. S-1 (Exhibit S-1 was not included in the appendix associated with the *Final Results* but was included in the appendix associated with the Remand Results at Tab 10).  Commerce did not subsequently request the missing invoice.

sales.[11]  Remand Results at 25–28.  The agency did not issue a supplemental questionnaire concerning the gross unit prices following the agency's discovery of the reporting issue.  *See id.* at 16–17.  Nevertheless, based on HHI's reporting deficiency, the agency applied total AFA.  *See id.* at 18–20.

Commerce's Second Sales Supplemental Questionnaire requested that, for certain home-market transactions, HHI provide pricing documentation and a narrative explaining HHI's classification of the parts as foreign like product or non-foreign like product.  Second Suppl. Questionnaire (May 19, 2017) ("HHI Second Suppl. Sales Questionnaire") at 10–11, CR 319, PR 168, RCJA Tab 11.  HHI provided the requested documents with annotations explaining its "categorization of the listed items."  Second Sales Suppl. Resp. (June 19, 2017) ("HHI 2SSQR") at 24–25, CR 392–445, PR 207–14, RCJA Tab 15; *see also id.*, Attach. 2nd SS-22.  HHI reported gross home market prices using values provided in "an initial contract," despite a later revised contract that identifies different values.  Remand Results at 17.  HHI asserted that the revised values were related to a part that was non-foreign like product and did not affect the gross unit price of the foreign like product.  *Id*.

Among those transactions subject to Commerce's request, identified by home-market sales sequence numbers ("SEQHs"), was SEQH 52.  *See* HHI Second Suppl.

---

[11] The Parties and Commerce interchangeably use the terms "subject merchandise" and "foreign like product" in describing the parts at issue.  *See, e.g.*, I&D Mem. at 3; HHI Opp'n Cmts. at 4; Gov't Resp. at 11.  The court uses the term "foreign like product." *See* 19 U.S.C. § 1677(16) (defining "foreign like product" when referring to home-market sales and the term "subject merchandise" when referring to U.S. sales).

Sales Questionnaire at 10.  The contract covering SEQH 52 also covered SEQH 53,

and HHI included documentation for SEQH 53 even though it had not been requested.

*See* Cmts. on the Dep't's Draft Results of Redetermination Pursuant to Court Remand

(Dec. 5, 2019) ("HHI Remand Case Br.") at 14, RCR 2, RPR 5, RCJA Tab 33; HHI

2SSQR, Attach. 2nd SS-22, ECF p. 398.[12]  The pricing breakdown for SEQH 53

indicated that two parts sold with the LPT were part of the main transformer, hereinafter

referred to as Parts A and B.[13]  HHI 2SSQR, Attach. 2nd SS-22, ECF p. 398.

> Commerce explained that the scope of the antidumping duty order covers:

> any other part attached to, imported with or invoiced with the active parts of
> LPTs.  The 'active part' of the transformer consists of one or more of the
> following when attached to or otherwise assembled with one another: the steel
> core or shell, the windings, electrical insulation between windings, the
> mechanical frame for an LPT.

Remand Results at 26.  Commerce found that Part A was "clearly identified as [foreign

like product] in the home market sample sales and expense documentation."  *Id.* at 18 &

n.68 (citing HHI Attach. 94).  Commerce further explained that HHI "confirmed that Part

A is [foreign like product] in its reporting of another home market sale."  *Id.* at 27.[14]

---

[12] The two project codes provided in the price breakdown at issue, *see* HHI 2SSQR,
Attach. 2nd SS-22, ECF p. 398–99, match those provided for SEQHs 52 and 53 in other
documentation.  *See* HHI Opp'n Cmts. at 6 n.4; *see also* 2nd Suppl. Sales Resp. to
Questions 42, 47–50, 52, 54, 55, and 77 [Attach. 94] (June 27, 2017) ("HHI Attach. 94"),
ECF p. 641, CR 473–82, PR 223–24, RCJA Tab 18 (referencing the project numbers for
SEQHs 52 and 53).

[13] Part A is an [[                                    ]], and Part B is an [[
                              ]].  Remand Results at 27.

[14] Commerce did not clearly identify in which home market sale HHI reported Part A as
foreign like product.  *See* Remand Results at 18 & n.68 (citing to HHI Attach. 94, which
covers several home market sales in their entirety); *id.* at 27 & n.116 (citing "[HHI

Commerce also claimed that "many of [HHI's] own record documents for [SEQH 53] demonstrate that Part B falls within the scope language of the order." *Id.* at 27–28. Thus, Commerce determined that Parts A and B are foreign like product and that HHI had not consistently reported them as such. *See id.*

Because Commerce lacked the "the documentation to determine the accuracy of the sales prices for all of the other home market sales," the agency found that HHI's home market sales database was not reliable and used total facts otherwise available. *Id.* at 18.  Commerce further found that HHI had not acted to the best of its ability in responding to Commerce's requests for gross home market price information and applied an adverse inference.  *Id.* at 18–19.

### 2.  Parties' Arguments

HHI argues that Commerce ignored "significant" evidence demonstrating that Parts A and B were properly not reported as foreign like product.  HHI Opp'n Cmts. at 4–11.  Moreover, HHI contends, substantial evidence does not support the agency's use of facts available because there was not an information gap in the record.  *Id.* at 11.

---

2SSQR] at Exhibit [SS-]8, page 9," when Exhibit SS-8 lacks a page nine).  According to HHI, SEQH 39 is the only sampled home market sale besides SEQH 52/53 that included Part A.  *See* HHI Opp'n Cmts. at 11.  However, at oral argument, the Government cited evidence that HHI sold Part A in SEQH 50.  *See* Oral Arg. at 1:33:30–1:34:05 (discussing HHI 2SSQR, Attach. 2nd SS-21, ECF p. 376).  Commerce stated that Part A "[[                                    ]]."  Remand Results at 27. This description matches the description of Part A in documents underlying SEQH 50. *See* 2SSQR, Attach. 2nd SS-21, ECF p. 376 (identifying Part A's function as "[[                                                                ]]," and indicating that Part A is [[                                                    ]]).  Thus, the court discerns that SEQH 50 is the "[]other home market sale [in which HHI] stated that Part A" is foreign like product.  Remand Results at 27.

HHI further contends that Commerce's use of facts available is unlawful because the agency did not provide HHI a chance to resolve any deficiencies in its reporting.  *Id.* at 12–14.  HHI avers that, even if there is an information gap in the record, it is not so pervasive as to warrant the use of total AFA.  *Id.* at 14–15.  HHI also argues that Commerce did not sufficiently justify its use of an adverse inference.  *Id.* at 16–17.

The Government argues that Commerce correctly found that Parts A and B fall within the scope of subject merchandise, and thus, that they are foreign like product. Gov't Resp. at 10–11.  The Government contends that Commerce did not ignore evidence that the parts were non-foreign like product; rather, Commerce was persuaded by other evidence that the parts were foreign like product.  *Id.* at 11–13; *see also* ABB Supp. Cmts. at 14–15 (arguing that the annotations on the sales contract cannot override the contract itself, which provides that the parts are part of the main transformer).[15]

The Government also contends that HHI did not argue that there is no gap in the record before Commerce and, thus, the argument should be deemed waived.  Gov't Resp. at 15.  Further, the Government argues that there is a gap in the record with respect to Parts A and B because HHI's inconsistent reporting called into question the reliability of HHI's home market sales database.  *Id.* at 15–16.  The Government avers that Commerce was not required to issue a supplemental questionnaire because HHI's

---

[15] ABB agrees with the Government's position "as to why (1) the application of total facts available is supported by substantial evidence and in accordance with law; (2) Commerce had no obligation to issue further questionnaires on this issue; and (3) an adverse inference was warranted in this case."  ABB Supp. Cmts. at 15–16.

response to the agency's initial information request was seemingly complete and

Commerce did not discover the reporting deficiency until preparing the *Preliminary*

*Results*. *Id.* at 18–19. The Government avers that HHI's failure to report accurately

Parts A and B justify the agency's reliance on total AFA. *Id.* at 20–23.

### 3. Analysis

#### a. Substantial Evidence Supports Commerce's Determination that Parts A and B are Foreign Like Product

In the Remand Results, Commerce explained that Parts A and B fall within the

scope of the order (insofar as they are foreign like product) despite being sold as

unattached to the main transformer. Remand Results at 26–27. Commerce further

explained that "[s]everal parts and components are separate from the main body [of the

transformer] and then attached to the mechanical frame at the installation site." *Id.* at

27. Commerce found that a document that HHI prepared for a customer identifies Parts

A and B as part of the main transformer. *See id.* at 27 & n.114 (citing HHI 2SSQR,

Attach. 2nd SS-22); *see also* HHI 2SSQR, Attach. 2nd SS-22 at ECF pp. 398–99.

Commerce also appears to have relied on documentation underlying SEQH 50 to find

that HHI identified Part A as foreign like product for another sale. *See supra* note 14.

Thus, the court finds that substantial evidence supports the agency's conclusion that

Parts A and B are foreign like product. *See* Remand Results at 27–28.

HHI has failed to demonstrate that Commerce's determination is unsupported by substantial evidence.[16]  First, HHI repeats arguments rejected by Commerce.  *Compare id.* at 24–25, 27 & n.113 (rejecting the arguments contained in HHI Remand Case Br. at 6–12), *with* HHI Opp'n Cmts. at 3–11 (repeating the same arguments). The court declines HHI's "invitation to reweigh the evidence in order to reject Commerce's conclusions, which were well-supported and fully explained."  *Downhole Pipe*, 776 F.3d at 1378.  Second, HHI argues that substantial evidence supports a finding that Parts A and B are not foreign like product.  *See* HHI Opp'n Cmts. at 5–9.  "That [HHI] can point to evidence of record which detracts from the evidence which supports the [agency's] decision and can hypothesize a reasonable basis for a contrary determination is neither surprising nor persuasive."  *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984).  Commerce's findings that Parts A and B are foreign like product and that HHI failed to report them as such are supported by substantial evidence and the court will not disturb them.

---

[16] In *HHI (AR4) I*, Commerce's finding that the record was "ambiguous" regarding whether Parts A and B are foreign like product was found to be supported by substantial evidence.  393 F. Supp. 3d at 1318.  HHI asserts that Commerce's prior finding is incompatible with Commerce's finding on remand that Parts A and B are foreign like product.  HHI Opp'n Cmts. at 5 (asserting that "ambiguous evidence that is contradicted by other evidence is not substantial evidence").  The court ordered Commerce to "clearly explain the basis for each finding and any extent to which the finding supports the use of any facts available, with or without an adverse inference," *if* the agency continued to find fault with HHI's "reporting of . . . particular parts[s] as between U.S. and home markets."  *HHI (AR4) I*, 393 F. Supp. 3d at 1318.  Thus, Commerce was permitted to come to a different conclusion if it provides a reasonable explanation supported by substantial evidence.

    b.  <u>Commerce's Refusal to Issue a Supplemental Questionnaire is</u>
        <u>Supported by Substantial Evidence</u>

As discussed above in connection with Commerce's treatment of Hyosung's

response, when a respondent provides a response that does not comply with the

request, Commerce "shall promptly inform the [party] submitting the response of the

nature of the deficiency and shall, to the extent practicable, provide that [party] with an

opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  In this case,

HHI challenges Commerce's failure to provide HHI with an opportunity to remedy or

explain the deficiency in its reporting of home market sales of Parts A and B; however,

substantial evidence supports Commerce's conclusion that it was impracticable to do

so.

For the *Final Results*, Commerce found that the record was unclear whether HHI

underreported gross home market prices based, in part, on the agency's finding that

HHI did not report sales prices inclusive of accessories.  *See* I&D Mem. at 15–17.

Commerce explained that it discovered discrepancies concerning HHI's reporting of its

gross home market prices after issuing the *Preliminary Results* and while evaluating the

accessories issue.  *Id.* at 17.  The court found that substantial evidence supported

Commerce's finding that the record was unclear whether HHI properly reported home

market prices but remanded Commerce's use of an adverse inference for this issue

because it appeared related to Commerce's findings regarding accessories.  *See HHI*

*(AR4) I*, 393 F. Supp. 3d at 1317–18.

On remand, Commerce resolved the accessories issue and distinguished it from

issues concerning HHI's reporting of gross home market prices.  Remand Results at 16,

19–20.  Commerce did not repeat or reference its reasoning regarding the

impracticability of issuing a supplemental questionnaire, *see id.* at 16–18, 31–32,

however, Commerce also did not disavow that prior reasoning.  Instead, Commerce

focused its discussion on asserting that it was not obligated to issue a supplemental

questionnaire because it provided HHI with "multiple opportunities to report its gross unit

prices accurately," but HHI's responses were deficient.  *Id.* at 31.

Substantial evidence supports Commerce's failure to issue a supplemental

questionnaire based on the reasoning Commerce provided for the *Final Results*.

Commerce explained that it discovered the reporting deficiencies concerning Parts A

and B after it issued the *Preliminary Results*.  *See* I&D Mem. at 17.  "At that point in

time, in light of [Commerce's] statutory deadlines to complete the review, it became

impractical to send [] another supplemental questionnaire" regarding the home market

price issue.  *Id.*  Indeed, there was nothing unclear about Commerce's request that HHI

report its gross unit prices for home market sales of foreign like product and HHI fails to

identify any basis to reject Commerce's reasoning regarding the orderly conduct of the

review.  In fact, 19 U.S.C. § 1677m(d) is not meant to "override the time-limits for

completing investigations or reviews, []or to allow parties to submit continual

clarifications or corrections of information or to submit information that cannot be

evaluated adequately within the applicable deadlines."  Uruguay Round Agreements

Act, Statement of Administrative Action ("SAA"), H.R. Doc. No. 103–316, vol. 1, at 865

(1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199.[17]  Thus, Commerce adequately

supported its decision not to issue a supplemental questionnaire to HHI.

      HHI contends that, despite Commerce's reasoning for the *Final Results*,

Commerce could have issued a supplemental questionnaire after issuing the

*Preliminary Results* or during the remand proceedings.  *See* HHI Opp'n Cmts. at 13

(asserting that Commerce could have issued a supplemental questionnaire "between

the *Preliminary Results* and *Final Results*" and Commerce "had four-and-a-half months

during the remand proceedings to issue a deficiency notice").  "Commerce prepares its

questionnaires to elicit information that it deems necessary to conduct a review, and the

respondent bears the burden to respond with all of the requested information and create

an adequate record."  *ABB (AR2) II*, 355 F. Supp. 3d at 1222.  Here, Commerce

requested the information at issue in the Second Sales Supplemental Questionnaire,

the response to which contained deficiencies, and Commerce explained that it was

impracticable to issue a subsequent questionnaire.  Again, section 1677m(d) is not

meant to allow an interested part "to submit information that cannot be evaluated

adequately within the applicable deadlines."  SAA at 865.

      Thus, the court sustains Commerce's determination not to issue HHI a

supplemental questionnaire concerning home market gross unit prices.

---

[17] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements Act." 19 U.S.C. §3512(d).

      c.  <u>Commerce's Reliance on Total AFA is not Supported by Substantial Evidence</u>

As discussed above, Commerce may use facts otherwise available when a respondent "fails to provide [necessary] information by the deadlines for submission of the information or in the form and manner requested;" however, that authority is subject to section 1677m(e).[18]  19 U.S.C. § 1677e(a)(2)(B).  In relying on total facts otherwise available,[19] Commerce must "examine the record and articulate a satisfactory explanation for its action."  *Yangzhou Bestpak*, 716 F.3d at 1378.  The agency may not base its decision on speculation.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'") (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1276 (Fed. Cir. 2002) (Dyk, J., dissenting)).

Here, Commerce's decision to disregard HHI's entire U.S. and home market databases and, instead, rely on total facts otherwise available is not supported by substantial evidence because it is based on speculation.  Commerce infers that HHI's entire home market sales database was unreliable based solely on HHI's failure to report properly its inclusion of Parts A or B in just two of its home market sales.[20]  *See*

---

[18] Commerce did not specify which subsection of 19 U.S.C. § 1677e(a) provided the basis for its resort to total facts available to determine HHI's antidumping duty margin. In light of the fact that HHI provided the information regarding its sales of Parts A and B, albeit excluding that data from its home market sales database, it appears that Commerce's basis is found in section 1677e(a)(2)(B) based on the "form and manner" in which HHI reported these parts.

[19] Commerce found that HHI's failure to reliably report gross home market prices warranted total facts otherwise available.  *See* Remand Results at 19, 29–32.

[20] HHI's home market sales database contains [[    ]] observations covering [[    ]] LPTs. HHI Remand Case Br. at 17.

Remand Results at 30–31.  Indeed, Commerce had documentation for several other home market sales which did not include Parts A or B.  *See* HHI 2SSQR, Attachs. 2nd SS-21, SS-22.  Not only are the two sales at issue a limited portion of the document-supported home market sales, it is not clear how these two sales undermined the reliability of other documented sales which did not include Parts A or B.  Commerce's finding that it had "no basis in the record for determining what [the] home market gross unit prices should be for the overwhelming majority of sales" is simply unsupported speculation and not based on substantial evidence.  Remand Results at 30–31.  The reporting deficiencies identified by Commerce, the failure to report the sales of two parts, are limited to "discrete categories of information."  *Cf. HHI (AR3) II*, 399 F. Supp. 3d at 1314 (affirming Commerce's use of total AFA when the deficiencies "were not limited to discrete categories of information but included service-related revenues, the LPT part, and sales related documentation").

Pursuant to section 1677m(e) Commerce may not disregard information that is "necessary to the determination" when certain criteria are satisfied.  19 U.S.C. § 1677m(e).  Commerce failed to address whether HHI's home market sales information did not meet these criteria.  Moreover, HHI's failure to include these two parts as foreign like product does not, by itself, suggest that all of HHI's home market sales information "[could not] be verified," was "so incomplete that it [could not] serve as a reliable basis for reaching the applicable determination," or could not "be used without undue

difficulties." *Id.* § 1677m(e)(1)–(3), (5).[21]  Thus, Commerce's decision to disregard all of

HHI's home market sales information[22] is inconsistent with 19 U.S.C. § 1677m(e).

Likewise, substantial evidence does not support the agency's use of an adverse

inference.  To support a finding that a respondent has not acted to the best of its ability,

Commerce must show that the respondent's failure to fully respond to Commerce's

information requests was the result of its failure "to put forth maximum efforts to

investigate and obtain the requested information from its records."  *Nippon Steel*, 337

F.3d at 1383–84.

Here, Commerce did not support its conclusion that HHI failed to put forth

maximum effort.  Instead, the agency's reasoning "mischaracterized record facts and

largely restated its reasons for using *neutral* facts available."  *Pro-Team Coil Nail Enter.*

*v. United States*, 43 CIT ____, ____, 419 F. Supp. 3d 1319, 1333 (2019).  Commerce

faulted HHI for not providing information concerning gross home market prices in

response to Commerce's requests when "sample sales documentation demonstrate[d

that HHI] possessed the information."  Remand Results at 18–19.  However, it appears

that HHI provided the information to Commerce but disagreed with the agency as to

---

[21] For the reasons discussed *infra*, substantial evidence does not support a finding that HHI failed to act "to the best of its ability in providing information and meeting requirements established by" Commerce, as provided in 19 U.S.C. § 1677m(e)(4).
[22] The court also rejects the Government's contention that HHI failed to exhaust its administrative remedies in arguing that there is no gap in the record with respect to HHI's reporting of Part A.  *See* Gov't Resp. at 15 (citing Remand Results at 30).  Here, HHI indicated in its remand case brief that its arguments that there was no gap in the record with respect to Part B also applied to Part A.  *See* HHI Remand Case Br. at 13 nn.52, 53.  Indeed, Commerce provided a detailed analysis of whether there was a gap in the record with respect to Part A.  *See* Remand Results at 27–28, 30–31.

whether it related to foreign like product.  *See id.* at 16–17 (describing HHI's response

to Commerce's questionnaire with respect to Parts A and B).

Moreover, Commerce's finding that HHI's failure to report gross home market

prices "impeded Commerce's conduct of the review*," id.* at 19, merely repeats the

agency's reasons for relying on facts available, *see id.* at 17–18 (explaining the

agency's decision to rely on total facts otherwise available).  "Commerce must do more

than simply restate its findings ostensibly supporting the use of neutral facts available to

support the use of adverse facts available."  *Pro-Team*, 419 F. Supp. 3d at 1333.

"[T]he antidumping laws are remedial not punitive."  *NTN Bearing Corp. v. United

States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995) (citation omitted).  The purpose of an

adverse inference is to incentivize a respondent "to cooperate with Commerce's

investigation, not to impose punitive damages."  *Essar Steel Ltd. v. United States*, 678

F.3d 1268, 1276 (Fed. Cir. 2012).  And while the standard "does not by its terms set a

willfulness or reasonable respondent standard," or require "motivation or intent," *Nippon

Steel*, 337 F.3d at 1383, it recognizes that "mistakes sometimes occur," *id*. at 1382.

"'Commerce must devise a non-arbitrary way of distinguishing among errors' that merit

an adverse inference and errors that do not."  *Pro-Team*, 419 F. Supp. 3d at 1333

(quoting *Nippon Steel Corp. v. United States*, 25 CIT 377, 382 n.10, 146 F. Supp. 2d

835, 841 n.10 (2001)).

Here, the record does not support Commerce's characterization of HHI's

reporting errors as sufficient to warrant an adverse inference.  Commerce requested

and HHI provided documentation for certain home market sales, including "a complete

break-down between foreign like product and non-foreign like product along with

detailed narrative explanation and supporting documentation" for the relevant

categorization.  I&D Mem. at 16–17; Remand Results 31.  HHI explained that for some

home market sales it reported price values in an initial contract, not those in a revised

contract, because the "changes to the contract values between the initial and revised

contract were related to a non-subject part."  Remand Results at 18 (citation omitted).

Only after issuing the *Preliminary Results* did Commerce question whether the parts at

issue were foreign like product.  *See* I&D Mem. at 17.  Indeed, in the Issues and

Decision Memorandum, Commerce had concluded that "the record [was] unclear"

regarding the requested information and could not definitively "determine whether

Hyundai understated [its] home market gross unit prices."  *Id*.  Thus, the record

indicates that HHI did not report Parts A and B as foreign like product in the two sales at

issue based on its good faith position on an issue about which even Commerce

previously acknowledged ambiguity.  *See id*.  While substantial evidence supports

Commerce's contrary determination regarding the classification of Parts A and B,

substantial evidence does not support Commerce's decision that HHI failed to act to the

best of its ability.

        For the reasons stated above, the court remands Commerce's reliance on total

AFA for HHI.

### B.  Issues Raised by ABB

        ABB argues that substantial evidence does not support Commerce's findings

that: (1) HHI reliably reported service-related revenue for two SEQUs; (2) HHI reported

the cost of spare parts as the agency requested; and (3) HHI's reported cost of

production was reliable.  ABB Opp'n Cmts. at 10–17; *see generally* Remand Results at

33–35.  ABB's arguments are not persuasive.

 First, substantial evidence supports Commerce's determination that HHI reported

all service-related revenue.  *See* Remand Results at 33.  Commerce considered ABB's

arguments that HHI failed to separately report revenues and prevented Commerce from

applying its capping methodology (i.e., ensuring that service related revenues did not

exceed their associated expenses).  *See id.* at 32 & n.144 (citation omitted); Pet'r's

Cmts. on the Draft Remand Redetermination (Dec. 5, 2019) ("ABB Remand Case Br.")

at 28, RCR 4, RPR 6, RCJA Tab 34.  Commerce explained that the activities at issue

were properly not reported as service related revenues because they were not services

performed on subject merchandise.  Remand Results at 33.  Commerce also rejected

ABB's contention that HHI failed to reconcile revenues and expenses for separately

negotiated services for two U.S. sales.  *See id.* at 34; ABB Remand Case Br. at 28.

Commerce explained that the revenues could be associated with individual expense

fields even though the expenses for various services were combined under a single

project.  Remand Results at 34.  Thus, Commerce reasonably concluded that HHI

properly reported the revenues and expenses associated with those services.  *See id*.

Before the court, ABB does not identify evidence that Commerce did not consider or

demonstrate any flaw in the agency's reasoning.  For these reasons, Commerce's

reliance on HHI's service related revenues is supported by substantial evidence.

Second, ABB disputes Commerce's finding that HHI reliably reported the cost of spare parts.  ABB Opp'n Cmts. at 14–15.  ABB contends that Commerce found HHI's reporting of spare parts deficient in response to the Initial Sections B & D Questionnaires but accepted the same response as sufficient in response to a supplemental questionnaire.  *See id.*  ABB's argument is premised on an assumption that Commerce's issuance of a supplemental questionnaire containing a question similar to one posed in the initial questionnaire establishes that Commerce found the response to the initial question deficient.  This argument lacks merit.  Similarities in questions between the initial and supplemental questionnaire alone do not serve as evidence that Commerce found the initial questionnaire response deficient.  ABB otherwise provides no basis to dispute Commerce's decision with respect to spare parts and the court finds that decision is supported by substantial evidence.  *See* Remand Results at 34.

Third, ABB contends that for two similar products which differed in cost of production, HHI inaccurately explained the reason for the cost difference such that HHI's reported cost of production is not reliable.  ABB Opp'n Cmts. at 15–17.  ABB raised this issue in the remand proceeding and the agency was not persuaded that the inconsistencies provided grounds to reject HHI's response.  *See* Remand Results at 34–35.  ABB's argument to the court amounts to nothing more than an invitation for the court to reweigh the evidence, which the court will not do.  *See Downhole Pipe*, 776 F.3d 1369, 1377.  ABB also appears to challenge Commerce's methodology for calculating HHI's cost of production.  ABB Opp'n Cmts. at 16–17.  However, ABB's

suggestion that Commerce should have used a different methodology, even if that

methodology would have been reasonable, is insufficient to demonstrate that the

methodology Commerce used is inconsistent with the statute.  *See JMC Steel Grp. v.*

*United States*, 38 CIT ___, ___, 24 F. Supp. 3d 1290, 1301 (2014).  For these reasons,

the court rejects ABB's cost of production arguments.

    In conclusion, Commerce's Remand Results with respect to these three issues

are supported by substantial evidence.

### IV.    Issues Concerning Iljin

    There is no statutory provision that directly addresses how Commerce is to

determine the dumping margin for non-examined companies in an administrative

review.  However, 19 U.S.C. § 1673d(c)(5) addresses such determinations in

investigations and Commerce uses this provision as a guide for determining dumping

margins for non-examined companies in a review.  *See, e.g.*, *Albemarle Corp. v. United*

*States*, 821 F.3d 1345, 1352 & n.6 (Fed. Cir. 2016).  Pursuant to this practice, the "all-

others rate" assigned to non-examined companies is determined as "the weighted

average of the estimated weighted average dumping margins" assigned to individually-

examined companies, "excluding any zero and de minimis margins, and any margins

determined entirely" on the basis of the facts available, including adverse facts

available.  19 U.S.C. § 1673d(c)(5)(A).  If, however, the dumping margins assigned to

all individually-examined companies are zero, de minimis, or based entirely on facts

available, Commerce "may use any reasonable method to establish the estimated all-

others rate for exporters and producers not individually investigated, including averaging

the estimated weighted average dumping margins determined for the exporters and producers individually investigated." *Id*. § 1673d(c)(5)(B).

Further guidance on the determination of the all-others rate is found in the SAA. When the dumping margins for all individually examined respondents "are determined entirely on the basis of the facts available or are zero or de minimis," the expected method of determining the all-others rate is to "weight-average the zero and de minimis margins and margins determined pursuant to the facts available, provided that volume data is available." SAA at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201. "Commerce may use 'other reasonable methods,' but only if Commerce reasonably concludes that the expected method is 'not feasible' or 'would not be reasonably reflective of potential dumping margins.'" *Albemarle*, 821 F.3d at 1352 (quoting SAA at 873, *reprinted in reprinted in* 1994 U.S.C.C.A.N. at 4201).

In this case, Commerce assigned both individually-examined respondents dumping margins of 60.81 percent based on total AFA, and consistent with 19 U.S.C. § 1673d(c)(5) and the SAA, Commerce used the expected methodology to assign this same margin to Iljin. I&D Mem. at 35. Iljin challenged this margin, but the court deferred ruling on this issue because the court remanded Commerce's reliance on total AFA for Hyosung and HHI, meaning that Iljin's claim could become moot depending on the remand results. *HHI (AR4) I*, 393 F. Supp. 3d at 1321. On remand, Commerce continued to rely on total AFA to determine the rate for the mandatory respondents and assigned all non-examined companies the same margin. Remand Results at 1, 23–24.

Iljin continues to challenge Commerce's assignment to it of the same AFA margin assigned to the two individually examined respondents as unsupported by substantial evidence and not in accordance with law.  *See* Iljin Opp'n Cmts.  However, because the court again remands the agency's reliance on total AFA to determine the individually-examined respondents' dumping margins, the court defers consideration of the rate assigned to Iljin pending the agency's redetermination on remand for the same reasons provided in *HHI (AR4) I*, 393 F. Supp. 3d at 1321.[23]

### CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Remand Results are remanded in part and sustained in part; it is further

**ORDERED** that, on remand, Commerce shall reconsider its determination not to issue a supplemental questionnaire to Hyosung in accordance with this opinion; it is further

**ORDERED** that, on remand, Commerce shall reconsider its determination to rely on total adverse facts available to determine HHI's margin in accordance with this opinion; it is further

**ORDERED** that Commerce's Remand Results are sustained in all other respects; it is further

---

[23] The arguments and authorities in Iljin's proposed Supplemental Brief concern the lawfulness of the method Commerce used to assign Iljin's rate.  Because the court defers consideration of these arguments, the court denies Iljin's motion for leave to file the Supplemental Brief as moot.

**ORDERED** that Commerce shall file its remand redetermination on or before February 16, 2021; it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule 56.2(h); it is further

**ORDERED** that any comments or responsive comments must not exceed 5,000 words; and it is further

**ORDERED** that Iljin's Motion for Leave to File a Supplemental Brief (ECF No. 139) is denied as moot.


/s/      Mark A. Barnett____
Mark A. Barnett, Judge

Dated: November 18, 2020_____
        New York, New York