UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| HYUNDAI HEAVY INDUSTRIES, CO., LTD., ) ) Plaintiff, ) and ) ) HYOSUNG HEAVY INDUSTRIES CORPORATION, ) ) Consolidated Plaintiff, ) ) v. ) ) UNITED STATES, ) ) Defendant, ) and ) ABB, INC., ) ) Defendant-Intervenor. ) ) | Consol. Ct. No. 18-00066 |

**HYOSUNG'S COMMENTS IN SUPPORT OF
SECOND REMAND RESULTS**

| | |
|---|---|
| **ARNOLD & PORTER KAYE SCHOLER LLP**<br>601 Massachusetts Avenue, N.W.<br>Washington, D.C. 20001<br>Phone: (202) 942-5000<br>Fax: (202) 942-5999 | J. David Park<br>Henry D. Almond<br>Daniel R. Wilson<br>Leslie C. Bailey<br><br>*Counsel for Hyosung Heavy Industries Corporation*<br>*Consolidated Plaintiff* |

**Dated: June 7, 2021**

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................... 1

II. The Parties Do Not Contest Whether Commerce's *Second Remand Results* Comply with the Court's Instructions ................................................................................. 1

III. Commerce's *Second Remand Results* Are Consistent with the Court's *Second Remand Order* and the Agency's Obligations Under the Statute ................................ 2

IV. Commerce's *Second Remand Results* Are Supported by Substantial Evidence .......... 6

V. ABB's Arguments Regarding the Court Allegedly Exceeding its Authority Are Meritless ................................................................................................................. 9

VI. Conclusion ............................................................................................................ 12

# **TABLE OF AUTHORITIES**

## **Cases**

*ABB Inc. v. United States*
  355 F. Supp. 3d 1206 (Ct. Int'l Trade 2018) .............................................................. 10

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*
  467 U.S. 837(1984) ..................................................................................................... 12

*Jindal Poly Films Ltd. of India v. United States*
  365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019) ............................................................ 2, 5

*Jindal Poly Films Ltd. of India v. United States*
  389 F. Supp. 3d 1405 (Ct. Int'l Trade 2019) ............................................................... 2

*Mannesmannrohren-Werke AG v. United States*
  77 F. Supp. 2d 1302 (*Ct*. Int'l Trade 1999) ................................................................ 8

*Matsushita Elec. Indus. Co. v. United States*
  750 F.2d 927 (Fed. Cir. 1984) ................................................................................... 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*
  463 U.S. 29 (1983) ....................................................................................................... 5

*Nippon Steel v. United States*
  337 F.3d 1473 (Fed. Cir. 2003) ................................................................................... 8

*NMB Singapore Ltd. v. United States*
  557 F.3d 1316 (Fed. Cir. 2009) ................................................................................... 5

*Rebar Trade Action Coal. v. United States*
  389 F. Supp. 3d 1371 (Ct. Int'l Trade 2019) ............................................................... 5

*Universal Camera Corp. v. NLRB*
  340 U.S. 474 (1951) ................................................................................................... 11

## **Statutes**

19 U.S.C. § 1677a(b) ........................................................................................................ 7

19 U.S.C. § 1677e(a) ..................................................................................................... 3, 5

19 U.S.C. § 1677m(d) ............................................................................................... *passim*

19 U.S.C. § 1677m(e) ............................................................................................... *passim*

I.  **Introduction**

On behalf of Consolidated Plaintiff Hyosung Heavy Industries Corporation ("Hyosung"), we submit these comments in support of the U.S. Department of Commerce's ("Commerce") April 6, 2021 Final Results of Redetermination Pursuant to Court Remand in the above-captioned action ("*Second Remand Results*"), ECF Nos. 154 (Confidential) and 155 (Public). Hyosung also submits these comments to respond to certain arguments submitted on behalf of Defendant-Intervenor ABB, Inc.  *See* ABB Cmts. Opp. 2d Remand (May 6, 2021), ECF No. 157 ("ABB Cmts.").

As discussed in further detail below, the Court should sustain the *Second Remand Results* first because no party contests that Commerce's *Second Remand Results* are not in compliance with the Court's instructions.  Second, the Court should sustain the *Second Remand Results* because Commerce's decision to calculate a margin using data contained in Hyosung's initial and supplemental questionnaire responses was in accordance with law.  Third, the Court should sustain Commerce's *Second Remand Results* because they are supported by substantial record evidence.  Finally, Hyosung submits that ABB's arguments regarding the Court's alleged misapplication of the standard of review governing this case are without merit.

II.  **The Parties Do Not Contest Whether Commerce's *Second Remand Results* Comply with the Court's Instructions**

ABB is the only party to have filed comments in opposition to the *Second Remand Results*.  ABB does not contend that the *Second Remand Results* do not comply with the Court's instructions for Commerce to "clarify or reconsider its decision not to issue a supplemental questionnaire to Hyosung in accordance with this opinion."  *See* Slip Op. 20-165, at 6, ECF Nos. 143 (Confidential Version), 150 (Public Version) ("*Second Remand Order*").  ABB, in fact, concedes that "the Court will likely affirm" the *Second Remand Results*.  ABB Cmts. at 2.  ABB

1

further states that the purpose of its comments on remand was to "preserve ABB's appellate rights, while conserving judicial resources by not reiterating arguments already made and rejected by the Court." *Id*.

Commerce's compliance with the *Second Remand Order* is thus not in controversy at this stage of the proceedings. Therefore, the Court should sustain Commerce's *Second Remand Results* without further delay. *See*, *e.g.*, *Jindal Poly Films Ltd. of India v. United States*, 389 F. Supp. 3d 1405 (Ct. Int'l Trade 2019) (summarily sustaining uncontested remand redetermination in case involving initial non-compliance with 19 U.S.C. § 1677m(d) in *Jindal Poly Films Ltd. of India v. United States*, 365 F. Supp. 3d 1379, 1387 (Ct. Int'l Trade 2019)).

**III.   Commerce's *Second Remand Results* Are Consistent with the Court's *Second Remand Order* and the Agency's Obligations Under the Statute**

ABB has pointed to nothing to undermine the fact that Commerce's *Second Remand Results* are consistent with law. In its comments, ABB in fact claims incorrectly that the Court rejected Commerce's *First Remand Results* regarding Hyosung's discount reporting on substantial evidence grounds. *See* ABB Cmts. at 5 ("In the *Second Remand Order*, the Court again determined that Commerce's findings for . . . Hyosung were not supported by substantial evidence."). Contrary to ABB's suggestion, the Court's holding on the discount issue was on legal, not factual, grounds. Specifically, the Court held that:

> absent a reasonable explanation for why it was impracticable for Commerce to provide Hyosung with an opportunity to remedy or explain its failure to report properly its discounts and interest charges, Commerce's rejection of Hyosung's entire database in favor of total adverse facts available is <u>not in accordance with law.</u>

*Second Remand Order* at 16 (emphasis supplied). Accordingly, the Court ordered Commerce to "clarify or reconsider its determination not to issue a supplemental questionnaire to Hyosung in accordance" with the Court's opinion. *Id.* at 6.

2

On remand, Commerce declined to issue a supplemental questionnaire to Hyosung and correctly recognized that the legal consequence of doing so was to remove its discretion to disregard all or part of the original and subsequent responses pursuant to 19 U.S.C. § 1677m(d), and rely on the facts otherwise available with an adverse inference pursuant to 19 U.S.C. § 1677e(a) and (b). *See Second Remand Results* at 23-24. Accordingly, on remand, Commerce used the data contained in Hyosung's submissions and calculated a margin of 0.0% for Hyosung. *See id*. Importantly, Commerce calculated Hyosung's margin using only the data that Hyosung submitted in its initial and supplemental questionnaire responses without making inferences (adverse or otherwise) about sales for which the record did not indicate discounts were provided. *See id*.[1]

The Court should sustain the *Second Remand Results* because Commerce on remand complied with the statute and the Court's instructions. The statute, at 19 U.S.C. § 1677m, sets out a carefully calibrated procedure for Commerce's "{c}onduct of investigations and administrative reviews." Relevant to this case are the provisions contained at subsections 1677m(d), 1677m(e). These provisions limit Commerce's discretion to disregard information submitted by a respondent, or make inferences about a respondent's reporting where Commerce perceives some aspect of a respondent's questionnaire responses to be deficient.

---

[1] Hyosung does note that it disagrees with Commerce as to whether the documentation on the record indicates that a discount applied to one specific sale. *See Second Remand Results* at 21-22. While Hyosung continues to disagree with Commerce's reading of the record with respect to this particular sale, Hyosung notes that Commerce's disposition of this matter is based on an interpretation (albeit incorrect) of the data contained in Hyosung's submission, not improper inferences pursuant to 19 U.S.C. § 1677e. While Hyosung continues to disagree with Commerce's reading of the sales documentation, it does not contest Commerce's determination on this issue before the Court.

As the Court discussed in its first opinion remanding the *Final Results* to Commerce, the agency's "authority to disregard Hyosung's data and rely on other sources of information, including its authority to use an adverse inference, is subject to 19 U.S.C. § 1677m(d)." Slip Op. 19-105, at 28 (Aug. 5, 2019), ECF No. 75 (Confidential), 82 (Public) (*"First Remand Order"*) (citing 19 U.S.C. § 1677e(a), (b)); *accord Second Remand Order* at 14-16. Subsection 1677m(d) provides that if Commerce determines that a response to a request for information . . . does not comply with that request," Commerce

> shall promptly inform the person submitting the response of the nature of the deficiency and shall, the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d). And, as the Court held in the *Second Remand Order*, Commerce failed to explain why it was not practicable to provide Hyosung an opportunity to explain or remedy the concerns regarding its price adjustments given the time remaining in the review. *See Second Remand Order* at 16.

Commerce's non-compliance with § 1677m(d) in the *Final Results* and the *First Remand Results* left the agency with two procedural options on second remand under the statute. The first option would have been for Commerce to issue Hyosung a supplemental questionnaire on remand pursuant to 19 U.S.C. § 1677m(d). Commerce did not issue a supplemental questionnaire or otherwise permit Hyosung to remedy or explain the deficiency it perceived in Hyosung's initial reporting. Accordingly, as a matter of law and as the Court correctly recognized in the *Second Remand Order*, Commerce was not at liberty to disregard any of the information contained in Hyosung's questionnaire responses or make adjustments to sales where there was no evidence of a discount or other price adjustment being granted. *See* 19 U.S.C. §

4

1677e(a) (providing that Commerce's authority to resort to "facts otherwise available," as a gap filling measure is "subject to section 1677m(d){.}").

In light of Commerce's decision not to issue a supplemental questionnaire on remand, the only remaining procedural option under the statute, which is reflected Commerce's conduct on remand, was to use the facts available on the record from Hyosung's submissions pursuant to 19 U.S.C. § 1677m(e), which provides that Commerce "shall not decline to consider" a respondent's questionnaire response if:

> the information is timely submitted; "the information can be verified"; "the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination"; the proponent of the information "has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by [Commerce]"; and "the information can be used without undue difficulties."

*Jindal Poly Films*, 365 F. Supp. 3d at 1386 (summarizing 19 U.S.C. § 1677m(e)(1)-(5)).

Commerce's decision not to issue a supplemental questionnaire, coupled with the fact that the agency adjusted Hyosung's reporting only with respect to discounts reflected on the sales documentation provided in its supplemental questionnaire response, makes clear that Commerce acted in compliance with the procedural requirements in section 1677m.[2]

---

[2] Commerce did not explicitly invoke subsection 1677m(e) in the *Second Remand Results*. Nevertheless, the Court should sustain the *Second Remand Results* because Commerce's use of Hyosung's data was consistent with 19 U.S.C. § 1677m(e), and "Commerce's explanation provides a reasonably discernable path" for how it addressed the Court's instructions in the Second Remand Order. *Rebar Trade Action Coal. v. United States*, 389 F. Supp. 3d 1371, 1381-82 (Ct. Int'l Trade 2019) (upholding Commerce's determination "{a}lthough Commerce did not expressly cite" the correct statutory provision because Commerce's determination "provides a reasonably 'discernable path' for how the agency selected" the relevant rate) (quoting *NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1321-22 (Fed. Cir. 2009) (in turn quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29 (1983)). This is particularly true where, as here, no party contests Commerce's compliance with the Court's instructions in the *Second Remand Order* or the statute.

**IV.     Commerce's *Second Remand Results* Are Supported by Substantial Evidence**

As noted above, Commerce's authority to use data contained in a respondent's questionnaire responses pursuant to 19 U.S.C. § 1677m(e) is premised on the following factual preconditions:  (1) the information must be timely submitted; (2) the information can be verified; (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination; (4) the proponent of the information has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by Commerce; and (5) the information can be used without undue difficulties.  *See* 19 U.S.C. § 1677m(e)(1)-(5).  Commerce's decisions in the second remand proceedings not to issue a supplemental questionnaire and instead rely on the information contained in Hyosung's questionnaire responses are supported by substantial evidence because each of these requirements are met for the reasons discussed below.

*First*, no party contends that Hyosung's responses to the initial or supplemental questionnaires were untimely and it is indisputable that Hyosung, in fact, complied with each of Commerce's deadlines.  Therefore, Commerce's use of Hyosung's questionnaire responses to calculate a margin for Hyosung is consistent with 19 U.S.C. § 1677m(e)(1).

*Second*, whether Hyosung's responses could be verified also is not at issue because Commerce chose to forgo verification in this review.  This second statutory factor is, therefore, irrelevant.

*Third*, Commerce's *Second Remand Results* make clear that the information Hyosung provided was "not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination."  19 U.S.C. § 1677m(e)(3).  Indeed, Commerce in the *Second Remand Results* found that the discounts reflected in sales documentation in Hyosung's supplemental questionnaire response were "reasonable as a basis" for calculating Hyosung's margin.  *Second*

*Remand Results* at 11. On remand, Commerce reviewed the documentation on the record for a significant number of other sales and determined that none of the additional sales involved discounts. *See id.* That is, Commerce, consistent with subsection 1677m(e), reviewed Hyosung's sales documentation on the record and calculated Hyosung's margin with reference to discounts only where the sales documentation reflected discounts. Commerce's use of this information was supported by substantial record evidence.

Hyosung's reporting of discounts also was "not so incomplete that it cannot serve as a reliable basis" for calculating Hyosung's antidumping duty margin because, as Hyosung has explained throughout the course of the underlying administrative review and before this Court, separately reporting discounts mathematically could not have affected Hyosung's margin. 19 U.S.C. § 1677m(e)(3). This is because the starting point for Commerce's margin calculations is the "price at which the subject merchandise is first sold (or agreed to be sold) in the United States," net of any discounts. 19 U.S.C. § 1677a(b). And, no party contests that Hyosung did not correctly report the appropriate gross unit price, even in the exceedingly small number of cases where a discount was reflected on the sales documentation but not separately reported in the database. Commerce's calculation of Hyosung's margin in the *Second Remand Results* bears this out. There simply is no rational basis for concluding that Hyosung's reporting was "so incomplete that it cannot serve as a reliable basis" for calculating Hyosung's margin. 19 U.S.C. § 1677m(e)(3). Commerce was correct to recognize this in the second remand proceedings in finding on remand that Hyosung's submissions were "reasonable as a basis" for calculating Hyosung's margin. *Second Remand Results* at 11.

*Fourth*, Hyosung has adequately "demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by {Commerce} with

7

respect to the information" at issue regarding discounts. 19 U.S.C. § 1677m(e)(4) (alteration added). Commerce did not find on remand that Hyosung failed to act to the best of its ability. It simply would not be credible to find that an error implicating such a small number of mathematically irrelevant datapoints in populating a U.S. sales database constitutes a failure to act to the best of one's ability. This is particularly true where, as here, populating the sales file involves manual review of thousands of pages of documentation for complex, custom-made capital infrastructure goods. And, Commerce acted reasonably when it reversed its prior finding on this issue. The statute "does not require perfection and recognizes that mistakes sometimes occur." *Nippon Steel v. United States*, 337 F.3d 1473, 1382 (Fed. Cir. 2003). Finding that Hyosung failed to cooperate to the best of its ability based on such a minor error would have been an abuse of discretion.

Finding that Hyosung did not satisfy 19 U.S.C. § 1677m(e)(4)'s requirement would also be unsupportable in light of Commerce's decision on remand not to provide Hyosung an opportunity to remedy or explain its initial discount reporting pursuant to 19 U.S.C. § 1677m(d). As the Court has recognized, a finding that a party failed to act to the best of its ability is inappropriate where "Commerce never identified why a respondent's failure to respond to two aspects of the questionnaire were anything more than inadvertent omissions and the respondent sought to correct its deficiencies in responding to a supplemental questionnaire," which is precisely the case here. *Mannesmannrohren-Werke AG v. United States*, 77 F. Supp. 2d 1302, 1316 (Ct. Int'l Trade 1999) (internal quotations and citations omitted). Indeed, in the *First Remand Order*, the Court explicitly found that Commerce's prior findings that Hyosung failed to act to the best of its ability based on the same record was "unsupported by substantial

evidence{.}" *First Remand Order*, Slip Op. 19-105, at 29. Nothing on the record has changed such that the Court's initial finding should be disturbed.

*Fifth*, and finally, Commerce's *Second Remand Results* make clear that Commerce's use of the information contained in its supplemental response "can be used without undue difficulties," thus satisfying the final prong of 19 U.S.C. § 1677m(e)(5). Specifically, all Commerce had to do on remand was review the sales documentation on the record and revise three lines of computer code to adjust its calculations for the discounts for the affected sales in Hyosung's U.S. sales file. *See* Second Remand Analysis Mem. at 7, Pub. 2d Rem. Rec. 2, Conf. 2d Rem. Rec. 5.

In sum, Commerce's determination to rely on Hyosung's submissions in calculating a margin is consistent with the statute and supported by substantial evidence. Indeed, Commerce's decision to rely on Hyosung's submission was the only result supported by the statute, in light of Commerce's prior non-compliance with 19 U.S.C. § 1677m(d) and its decision in the second remand proceedings not to issue a supplemental questionnaire on the discount issue. As demonstrated above, Commerce's determination not to issue a supplemental questionnaire was itself reasonable, because Hyosung's reporting of discounts was not so flawed as to render its reporting unreliable, and mathematically could not have affected Commerce's margin calculation in any event. Accordingly, the Court should sustain the *Second Remand Results* because they comply with the Court's *Second Remand Order*, are consistent with 19 U.S.C. § 1677m(e), and are supported by substantial evidence.

**V.     ABB's Arguments Regarding the Court Allegedly Exceeding its Authority Are Meritless**

ABB claims, in a conclusory manner, that "the Court did not properly apply the standard of review in this case." ABB Cmts. at 8. Citing the Federal Circuit's examination of the

substantial evidence standard in the context of a U.S. International Trade Commission sunset review, ABB argues that the *Final Determination* should be "reinstated in full." *Id.* (citing *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)). Contrary to ABB's misplaced argument, the Court's disposition of this case has been entirely consistent with the standard of review governing the Court's review of Commerce's factual and legal determinations, and ABB has pointed to nothing that would even remotely suggest otherwise.

As an initial matter, it bears emphasizing that the government initially elected not to defend the *Final Results* before this Court. Instead, the government, on behalf of Commerce, initially requested that this Court grant Commerce an open-ended voluntary remand of the *Final Results* to "reconsider" its original determination, which the Court denied. *See First Remand Order* at 9. Thus, ABB's contention that the *Final Results* were sustainable in their entirety would appear to be inconsistent with Commerce's (and the government's) own position at the outset of these proceedings.

Moreover, ABB has failed to point to any indication that the Court's analysis of each of the three bases for Commerce's original total AFA determination was inconsistent with the governing standard of review in either the first or second remand proceedings. First, the Court's finding that Commerce "lacks a legal basis" to reduce gross unit price for purported service revenue reflected internal documentation in the absence of substantial evidence to support a finding that a company's "provision of the services in question was separately negotiable with the unaffiliated customer," is entirely consistent with the plain language of the statute and this Court's precedent covering other segments of this proceeding. *First Remand Order* at 20-21 (citing *ABB Inc. v. United States*, 355 F. Supp. 3d 1206, 1220 (Ct. Int'l Trade 2018)).

10

Second, regarding the overlapping invoice, ABB's contention that Commerce's original *Final Results* should have been sustained in full is particularly nonsensical in light of Commerce's complete reversal on this issue in the *First Remand Results*. In neither the *Preliminary* nor the *Final Results* did Commerce articulate its exact concerns with the invoices at issue. However, in response to the Court's *First Remand Order*, Commerce provided an explanation for its concern regarding these invoices in the first remand proceedings. *See Second Remand Order* at 17-20. After finally receiving some form of explanation regarding the agency's concern, Hyosung explained why Commerce's understanding of these invoices was incorrect. In light of Hyosung's explanation, Commerce correctly reversed itself in the *First Remand Results*. *See id.* The Court reviewed Commerce's rationale for accepting Hyosung's explanation and found it to be supported by substantial evidence. *See id.* Commerce's correction of its error in the *First Remand Results* certainly is supported by much more than a "mere scintilla" of evidence, and the Court was correct to sustain Commerce's reasonable redetermination on this issue. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

Finally, as discussed above, the Court's treatment of the discount issue was based on a reading of the plain text of 19 U.S.C. § 1677m(d). And, as the Court correctly recognized, under the plain text of the statute, "the relevant inquiry is whether it was practicable for Commerce to provide Hyosung an opportunity to remedy or explain the deficiency." *Second Remand Order*, Slip Op. 20-135, at 15-16 (citing 19 U.S.C. § 1677m(d)). Commerce provided no explanation in either the *Final Results* or the *First Remand Results* as to why it was not practicable for the agency not to provide Hyosung such an opportunity. The Court therefore was correct to remand this matter to Commerce. ABB does not even contest that Commerce made any finding in the *Final Results* that it was not practicable to issue as supplemental questionnaire. Such a finding

was required under the plain text of the statute. Accordingly, ABB cannot be heard to claim that the Court misapplied its standard of review when the Court's holding was based on Commerce's failure to adhere to the plain text of the statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

In light of the foregoing, it is not credible to claim, as ABB attempts to do, that the Court misapplied its standard of review in its assessment of either the law or the facts of this case.

## VI. Conclusion

After two remands and nearly four years since prematurely shutting down the review and defaulting to total AFA, Commerce finally has issued a determination that is consistent with the record facts, the law, and basic standards of investigative fairness. For all the reasons discussed above, Hyosung respectfully requests that the Court sustain the *Second Remand Results* in full and issue final judgment accordingly.

                                        Respectfully submitted,

                                        /s/ J. David Park
                                        J. David Park
                                        Henry D. Almond
                                        Daniel R. Wilson
                                        Leslie C. Bailey
                                        *Counsel for Hyosung*
                                        *Consolidated Plaintiff*

                                        Arnold & Porter Kaye Scholer LLP
                                        601 Massachusetts Avenue, N.W.
                                        Washington, D.C. 20001
                                        Phone: (202) 942-5000
                                        Fax: (202) 942-5999
                                        E-mail: David.Park@apks.com

Dated: June 7, 2021

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the attached Comments in Support of Second Remand Results, filed by Consolidated Plaintiff Hyosung Heavy Industries Corporation on June 7, 2021 contains 3,605 words, exclusive of the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing system used to prepare these comments, and therefore complies with the Court's instructions in the Second Remand Order limiting comments to 5,000 words. *See* Slip Op. 20-165, at 40 (Nov. 18, 2020).

By:    /s/ J. David Park<br>
J. David Park

Dated: June 7, 2021